Dave Sanford KERBY *v.* Linda Webb KERBY

CA 89-507 792 S.W.2d 364

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1990

*Jon R. Sanford*, for appellant.

*Charles R. Chadwick*, for appellee.

JUDITH ROGERS, Judge. In this custody case, the parties were divorced on September 17, 1980, when their daughter, Crystal, was three years old. The decree provided for custody of the child to be placed with appellee, Linda Kerby, with reasonable rights of visitation being granted to Dave Kerby, the appellant. The appellant is now appealing from the chancellor's order entered on September 1, 1989, denying his motion for a change of custody. For reversal, appellant argues that the chancellor's decision not to change custody is inconsistent with the findings made at the final hearing on this matter. Based on our *de novo* review of the record, we cannot agree with appellant's contention and affirm the order made by the chancellor.

The record of this case reveals a long and bitter history of the parties contesting custody of this child. It also appears from the record that after the divorce custody of the child was exchanged between the parties by informal agreement several times. Beginning in 1984, appellant filed a motion requesting specific visitation or a change of custody, in which he asserted that appellee had refused him summer visitation. Appellee responded with a motion for modification of the decree and for contempt. In her motion, appellee accused the appellant of having sexually abused the child, and requested that his visitation be suspended on that basis. She also asked that appellant be held in contempt for the non-payment of child support.

A hearing was not held on these issues until February of 1986. Based on the testimony, the chancellor ordered that custody was to remain with appellee, and a schedule for supervised visitation of the child with appellant was arranged. The chancellor, however, continued the matter for further hearing, taking all issues under advisement pending a final determination, including the question of delinquent child support.

The final hearing did not take place until April 26, 1989. The

interim period was marked by the filing of motions for contempt by both parties, with appellant consistently citing problems with visitation and appellee asserting the failure of appellant to pay child support. Appellant again moved for a change of custody on May 26, 1987, alleging that appellee had engaged in a course of conduct designed to alienate the child against him. Also during this interval, orders were entered reducing the amount of child support, and increasing appellant's visitation.

At the hearing in April of 1989, appellant testified that he had remarried and was living in Hattiesburg, Mississippi. He related that the child had lived with him for periods both before the divorce during separation, and afterwards, and that he had previously enjoyed an excellent relationship with his daughter. He denied having sexually abused the child, and intimated that because appellee was jealous of his relationship with the child she had fabricated the allegation in an effort to alienate the child against him. He gave testimony concerning the problems he had faced with visitation since the divorce, and said that he had discontinued visitation after September of 1988. He said that the first visit with the child in September had gone well, but that during the second the child had spelled out with dominoes, "I hate Dave." He also said that on that occasion she wrote, "Dave is a satan worshipper." He testified that appellee was responsible for the child's change in attitude and that she had deliberately turned the child against him. He further admitted that he had ceased paying child support at times when he felt he was being denied meaningful visitation. The record reflects that appellant made no child support payments after July in 1986, none in 1987, and only sporadic payments in 1988 and 1989.

The appellee testified that Crystal was twelve years old, in the sixth grade, and had been in her custody for six and a half years. She said that Crystal was popular in school and a good student, making A's and B's, and that she played the piano and took dancing and swimming lessons. She stated that she first suspected that appellant had abused Crystal in the fall of 1983, and that she had taken the child for counseling. She detailed some of the facts surrounding this allegation as had been told to her by the child. She denied having spoken ill of the appellant to the child, or that she had promoted the child's dislike for him. She testified that during a visit the child had run to her crying, saying

the appellant had hit her.

Crystal also testified at the hearing. She said that she loved her mother and wanted to live with her. She said that she did not like the appellant as he had been mean to her when she had lived with him. She related that during the last visit with appellant, he had hit her because she would not say that she loved him into a tape recorder. She further said that she did not love the appellant, and that she did not wish to see him. On redirect, the child said that appellant had abused her.

At the conclusion of the hearing the chancellor made the following findings:

> (1) I think the charge of sexual abuse is completely unfounded and unjustified in the case.
> (2) I am finding that neither of the parties have any intention of cooperating with anything that the court orders as shown by their conduct in the past. I think Mr. Kerby's conduct is less than it should be, and I think Mrs. Kerby has embarked on a deliberate course of alienating the child and interfering with any visitation of any sort.
> (3) The petition for change of custody is denied. I think the parties have messed this child up to the extent that I don't think a change of custody would be justified. But I think that a visitation order that the parties can co-operate with until such time as the child perhaps gets of age and maybe she'll get straightened out. I propose to adjudge both parties in contempt and order them both committed for ten days, with Mr. Kerby being confined until such time as his support is current as shown by the court clerk's records.
>
> Now what can we work out with the visitation? It will need to be at Russellville. It will need to be at some place that Mr. Kerby and his present wife can visit with the child some without somebody looking over their shoulder and it would need to be at a time when both of them can co-operate on acting about like adults.

On appeal, the appellant argues that the chancellor erred in failing to change custody given the findings that were made. Specifically, it is the appellant's contention that once the chancellor found that the allegation of abuse was unfounded and that

appellee had engaged in a course of conduct designed to alienate him from the child, it was incumbent on the chancellor to order a change of custody. In support of this proposition, appellant has cited cases decided in Arkansas and other jurisdictions which he contends establishes a *per se* rule that a change in custody is mandatory when such findings are made. We disagree, as we do not believe that the principles regarding child custody can be applied in such an inflexible manner.

Our standard of review is well-settled. On appeal from a chancery court case, this court considers the evidence *de novo*, and we will not reverse the chancellor unless it is shown that the lower court's decision is clearly contrary to a preponderance of the evidence. *Thigpen* v. *Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). As in all custody cases, the primary consideration is the welfare and best interests of the children involved; all other considerations are secondary. *Hoing* v. *Hoing*, 28 Ark. App. 340, 775 S.W.2d 81 (1989). Chancellors in such cases must utilize to the fullest extent, all their powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. We know of no other cases in which the superior position, ability and opportunity of the chancellor to observe the parties carry as much weight as those cases involving minor children. *Riddle* v. *Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989).

We have reviewed the cases cited by appellant and find little support in his argument. In one of the cases referred to us, *Blake* v. *Smith*, 209 Ark. 304, 190 S.W.2d 455 (1945), the supreme court did recognize that an attempt to alienate a child's affections is a factor to consider in making custody determinations. However, the court specifically held that this alone would not be sufficient grounds to warrant a change of custody. In *Riddle* v. *Riddle*, *supra.*, this court acknowledged that the law of child custody cannot be applied in a rigid and mechanical fashion, as to do so conflicts with both statutory and well-settled law that custody awards are to be made in accordance with the welfare and best interests of the child. In keeping with the concept of promoting flexibility in custody cases, in *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975), the supreme court said:

> . . . the fact that the party seeking to gain or retain

custody of a child has violated court orders or has been in contempt of court in that respect is a factor to be taken into consideration in the court's exercise of discretion to grant or deny a modification of custody orders but is not so conclusive on the matter as to require the court to act contrary to the best welfare of the child. To hold otherwise, we would have to permit the desire to punish a parent to override the paramount consideration in all child custody cases, i.e., the welfare of the child involved. We have heretofore said that the courts must be keenly alert to the necessity of preventing the shortcomings or merits of the parents from overshadowing that which is best for the child. The chancellor committed no error in this respect.

*Id.* at 614, 527 S.W.2d at 920 (1975) (citations omitted). In sum, we decline to adopt the position advanced by appellant, and hold that such decisions must be based on the particular facts and circumstances of each case, in relation to the standard of the best interest of the child. Hard and fast rules are particularly inappropriate in custody cases.

 Turning to the merits, the chancellor expressly found fault with the conduct of both parties, stating that he was inclined to hold them both in contempt, although he ultimately did not do so. Obviously, the appellee's behavior cannot be condoned, nor can the appellant's refusal to support the child be ignored. In essence, the chancellor found that each party's actions had been harmful to the child. Given the existing situation, the chancellor provided for regular visitation to the end that the appellant's relationship with the child would be mended. Under the circumstances, we cannot say that the chancellor's finding that the welfare of the child would best be served by continuing custody with appellee not clearly against the preponderance of the evidence.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.