Tammy Suanne STAAB v. Thomas Wesley HURST

CA 93-442                                                       868 S.W.2d 517

Court of Appeals of Arkansas
En Banc
Opinion delivered January 19, 1994

130

*John W. Settle Law Firm*, by: *John W. Settle*, for appellant.

*Brenda Horn Austin*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant, Tammy Suanne Staab, appeals from an order denying her request for permission to move from Fort Smith, Arkansas, to Wellington, Texas, with the parties' fifteen-month-old daughter. The appellee, Thomas Wesley Hurst, opposed the move contending that he would effectively be denied visitation because of the geographical distance. For the reasons which follow, we reverse and remand for proceedings consistent with this opinion.

The parties divorced in June 1992. Appellant was awarded custody of their minor daughter subject to appellee's visitation every Wednesday evening, every other weekend, alternating holidays, and two weeks in the summer. The decree further provided that the child was not to be permanently removed from the jurisdiction of the court without the court's permission.

Appellant subsequently filed petitions to have appellee cited for contempt and for permission to remove the child from the jurisdiction of the court. At a hearing held in October 1992, appellant testified that she was seeking permission to move to Wellington, Texas, so that she could attend nursing school. Appellant testified that her income consisted of child support and various entitlements that she and the child receive from federal assis-

tance programs. She testified that appellee had made limited economic contributions, was behind in his child support obligation, and that she had difficulty meeting her basic financial needs. Appellant testified that she had applied to local nursing schools in Fort Smith and, while she met admission criteria, she was not selected to be admitted because the competition for the limited number of openings was so great. She stated that she learned through friends in Wellington, Texas, that she might be able to gain entry into the nursing program there. Appellant testified that she drove the six hours to Wellington, spoke to nursing school administrators, took a pre-test for admission into the nursing program, and was told that she did well enough to gain admittance. Appellant stated that, while the next academic year would not begin until August 1993, she had to be present for another necessary examination in February 1993 and that she had already found a home there and a job as a nurse's aide in a hospital near the nursing school.

Appellee did not seek to gain custody of the child. He requested only that appellant not be allowed to move with their daughter. He stated that on his take home pay of approximately $170.00 per week he would be unable to afford the six-hour drive to Wellington. He stated that since the divorce he had missed only one scheduled visit with the child, and that he was sick on that occasion. He stated that he thought it would not be in the parties' daughter's best interest to be moved some distance from him and from her grandparents, and he expressed concern that he might not see her for several months at a time. Appellee conceded that he was behind in his child support obligation and that he had failed to comply with the previous court order that he pay an outstanding medical bill. Appellee testified that he was a licensed mortician, capable of practicing in over thirty states, but was not currently working as a mortician. He testified that he was presently working for a wood-working company, admittedly making less than half the income he had made as a mortician. He testified that he had quit his last job as a mortician some ten months prior to the October hearing because he wanted a "break." He testified that he was actively seeking to return to that field, was considering possibilities both in Little Rock and in Houston, Texas, and likely would himself soon be moving to secure such employment.

At the conclusion of the hearing, the court held appellee in contempt of court. Appellee was ordered to pay over $700.00 in back child support and previously ordered attorney's fees, and $45.00 per month towards outstanding medical bills. The court denied appellant's petition to move to Texas with the child, stating as follows:

> I just can't see that it would be in this baby's best interest who is a little over a year old to be removed from this area where her father where, because of the distance of approximately 500 miles [sic]. . . would make it impractical for him to be able to exercise his visitation rights. Also, the child has had a very close relationship with both grandparents, and it would virtually greatly reduce if not eliminate the contact with the grandparents. I think that is important to the child's development. I think there are numerous educational opportunities available in this immediate area that the mother can pursue. I appreciate her desires to better herself and get a degree in something, but I think there are numerous avenues that can be explored. Whether or not she can get into a nursing program in this area, that I don't know. It may be that she may need to re-evaluate what she wants to do there. The father has been diligent in exercising his visitation. I think the testimony was he has only missed one visit and that was because he was sick. The Court finds that the mother has no family members living in the Wellington, Texas area. Another thing that concerns the Court is the schooling that she is wanting to enter into out there is not even scheduled to start until August of 1993.

Appellant appeals from this denial of her petition.

■ The first issue that we must consider in this case is the standard to be applied by a trial court in determining when a custodial parent may relocate outside the jurisdiction of the court. Obviously, there can be no precise formula that will resolve each case. Until now, while expressing concern for the non-custodial parent's rights of visitation, our courts have said little more than that "the parent having custody of a child is ordinarily entitled to move to another state and to take the child to the new domicile." *Ising* v. *Ward*, 231 Ark. 767, 768, 332 S.W.2d 495

(1960); *Gooch* v. *Seamans*, 6 Ark. App. 219, 220, 639 S.W.2d 541 (1982). While we agree with the chancellor that achieving the "best interests of the child" remains the ultimate objective in resolving all child custody and related matters, we believe that the standard must be more specific and instructive to address relocation disputes. In particular, we think it important to note that determining a child's best interests in the context of a relocation dispute requires consideration of issues that are not necessarily the same as in custody cases or more ordinary visitation cases.

■■ After a divorce and an initial custody determination, the determination of a child's best interests cannot be made in a vacuum, but requires that the interests of the custodial parent also be taken into account. In *D'Onofrio* v. *D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27, *aff'd* 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976), perhaps the leading case on custodial parent relocation and which we find persuasive, the court discussed this issue as follows:

> The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interest of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

*D'Onofrio*, 365 A.2d at 29-30. *See also Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S.W.2d 484 (1954) (in approving the custodial parent's move from Arkansas to California, the supreme court specifically considered that she "prefer[ed]" to live in California and was "happy" there). The court in *D'Onofrio* was careful not to equate the best interest of the child with the best interest of the custodial parent. The court specifically recognized the importance of developing and maintaining a relationship with the non-custodial parent and the importance of visitation:

> Where the residence of the new family unit and that of the

non-custodial parent are geographically close, some variation of visitation on a weekly basis is traditionally viewed as being most consistent with maintaining the parental relationship, and where, as here, that has been the visitation pattern, a court should be loathe to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons. . . .[Nevertheless,] the court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable lifestyle for the [custodial parent] and children be forfeited solely to maintain weekly visitation by the [non-custodial parent] where reasonable alternative visitation is available and where the advantages of the move are substantial.

*D'Onofrio*, 365 A.2d at 30.

■■ *D'Onofrio* also attempted to articulate a framework by which courts should be guided in deciding relocation disputes. It provides that, where the custodial parent seeks to move with the parties' children to a place so geographically distant as to render weekly visitation impossible or impractical, and where the non-custodial parent objects to the move, the custodial parent should have the burden of first demonstrating that some real advantage will result to the new family unit from the move. *D'Onofrio* further provides that, where the custodial parent meets this threshold burden, the court should then consider a number of factors in order to accommodate the compelling interests of all the family members. These factors should include: (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent. *See also Cooper* v. *Cooper*, 99 N.J. 42, 491 A.2d 606 (1984).

We conclude that the criteria adopted in *D'Onofrio* are sound.[1] We also conclude, from our review of the chancellor's ruling, that he made his determination of the child's best interests without appropriate consideration of the interests and well-being of the custodial parent. It would also appear that no consideration was given to the possibility of alternatives to the existing visitation schedule.

Chancery cases are reviewed *de novo* on appeal, and we ordinarily render the decree here that should have been rendered below. The rule is not imperative, however, as this court has the power, in furtherance of justice, to remand any case in equity for further proceedings, including even the taking of additional evidence. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979); *see Bradford* v. *Bradford*, 34 Ark. App. 247, 808 S.W.2d 794 (1991). Here, the theory on which the chancellor decided the case was somewhat erroneous, and did not take into account several aspects of the guidelines we adopt today. Because the case involves a minor child, it is also one of that class of cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carries its greatest weight. *See Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981). Under these circumstances, we think that the case should be remanded for the chancellor to have the opportunity to decide the issues in accordance with the standards set forth in this opinion. We emphasize that we express no opinion as to the determination that should be made by the chancellor. We recognize that the parties' circumstances have changed in the fourteen months

---

[1]Several of our sister states also follow *D'Onofrio. See, e.g., Bachman* v. *Bachman*, 539 So.2d 1182 (Fla. 4th Dist. Ct. App. 1989); *Matilla* v. *Matilla*, 474 So.2d 306 (Fla. 3rd Dist. Ct. App. 1985); *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 481 N.E.2d 1153 (1985); *Hale* v. *Hale*, 12 Mass. App. 812, 429 N.E.2d 340 (1981); *Anderson* v. *Anderson*, 170 Mich. App. 305, 427 N.W.2d 627 (1988); *Bielawski* v. *Bielawski*, 137 Mich App. 587, 358 N.W.2d 383 (1984); *Schwartz* v. *Schwartz*, 107 Nev. 378, 812 P.2d 1268 (1991); *Ramirez-Barker* v. *Barker*, 107 N.C. App. 71, 418 S.E.2d 675 (1992); *Fortin* v. *Fortin*, 500 N.W.2d 229 (S.D. 1993); *Taylor* v. *Taylor*, 849 S.W.2d 319 (Tenn. 1993); *Lane* v. *Schenck*, 614 A.2d 786 (Vt. 1992); *Love* v. *Love*, 851 P.2d 1283 (Wyo. 1993). We recognize that New Jersey has a statute that provides that children cannot be removed from the jurisdiction without the consent of the non-custodial parent "unless the court, upon good cause shown, shall otherwise order." N.J.S.A. 9:2-2. Although Arkansas has no such statute, we think that the factors outlined in *D'Onofrio* should apply to a chancellor's consideration of the issue of relocation. *See Bachman* v. *Bachman*, 539 So.2d 1182 (Fla 4th Dist. Ct. App. 1989).

since the original hearing. Therefore, further proceedings on remand should include hearing additional pertinent evidence that the parties may offer. *See Cooper* v. *Cooper*, 99 N.J. 42, 491 A.2d 606 (1984); *Hale* v. *Hale*, 12 Mass. App. 812, 429 N.E.2d 340 (1981).

Reversed and remanded.

ROGERS, J., concurs.

COOPER, J., dissents.

MAYFIELD, J., not participating.

ROGERS, J., concurring. I agree with and join in the reversal of the chancery court's decision. The dissent glosses over the facts that the noncustodial parent quit his job, did not pay support at times and that the custodial parent's desire to enter nursing school had been long standing and was interrupted by her pregnancy. The training was only of a year's duration and was an honest attempt for this woman to place herself in a position where she could more ably support herself and her child. Additionally, the child was not of school age and more flexible, longer time periods with each parent could accomplish the same ends as prohibiting the mother from leaving the jurisdiction. She was faced with a true dilemma and like the biblical mother sacrificed herself for her child.

COOPER, J., dissenting. I dissent from the prevailing opinion of this Court because I do not believe the case should be reversed and remanded. Although we review chancery cases *de novo*, we do not reverse the chancellor's decision unless it is clearly against the preponderance of the evidence. *Kerby* v. *Kerby*, 31 Ark. App. 260, 792 S.W.2d 364 (1990). Here, the chancellor found that it was not in the best interest of the child to be moved to Texas, and the prevailing opinion does not find that this conclusion is clearly erroneous or against the preponderance of the evidence.

The majority's opinion adopts the criteria set out in *D'Onofrio* v. *D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27, *aff'd* 144 N.J. Super. 352, 365 A. 2d 716 (App. Div. 1976), as guidelines to be used in custodial parent relocation cases. However, I believe that this is not necessary since our standard of review is

ultimately the best interest of the child. Minors are wards of the chancery court, and it is the duty of these courts to make all orders which will properly safeguard their rights. *Clark* v. *Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992). The prime concern and controlling factor is the best interest of the child, and the court in its sound discretion will look into the peculiar circumstances of each case and act as the welfare of the child appears to require. *Id.* I believe that this is what the chancellor did below.

Although our Supreme Court has allowed custodial parents to remove their children to other states, the decisions in the earlier cases were based upon improvement of financial, living, or other conditions or the ability of the noncustodial parent to exercise visitation. *See Ising* v. *Ward*, 231 Ark. 767, 332 S.W.2d 495 (1960); *Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S.W.2d 484 (1954). In *Gooch* v. *Seamans*, 6 Ark. App. 219, 639 S.W.2d 541 (1982), we said "[e]xcept for the visitation difficulties which are created by the move to Oklahoma, we find nothing in the record which supports the trial court's denial of appellant's removing the children from the state." However, this is not the situation in the case at bar. The chancellor based his decision on the child's young age, the distance to Wellington, Texas which would make it impractical for the father to exercise his visitation rights, the child's close relationship to her grandparents, the loss of contact with her extended family and lack thereof in Texas, the father's diligent exercise of his visitation rights, and the fact that the nursing school was not scheduled to start until August of 1993, ten months after the hearing. Also, it should be noted that the appellant had yet to take an entrance examination scheduled for February 1993, and while she had secured employment in Texas, the record reveals that her hourly wage would be the same as that which she earned at a job in Arkansas which she voluntarily left in October 1992. Therefore, the appellant would not even meet the threshold burden in *D'Onofrio* requiring the custodial parent to demonstrate some real advantage resulting from the move. I find nothing in this case to warrant remand, thereby allowing the appellant another bite at the apple. Furthermore, the issue may now be moot since the nursing school was to begin in August 1993.

I would review the case *de novo* on the record, and even applying the standards suggested in *D'Onofrio*, I would affirm.