Michelle LOWELL *v.* Robert E. LOWELL, et al.

CA 95-875 934 S.W.2d 540

Court of Appeals of Arkansas
Division I
Opinion delivered December 11, 1996

*Booth & Honeycutt, P.L.C.,* by: *Frank W. Booth,* for appellant.

*Gunn, Sexton, Canova & Platt,* by: *Jane Watson Sexton* and

*Katherine E. Platt,* for appellees.

JOHN F. STROUD, JR., Judge. Appellant, Michelle Lowell, has three sons by different former husbands, who are the appellees in this case. She was first married to appellee Brian Jackson. Their son is Joshua Scott Jackson. Appellant's second husband was appellee Jimmy Smith. Their son is Brock Smith. Appellant's third husband was appellee Robert E. Lowell. Their son is Robert A. Blake Lowell. Appellant was married to Robert Lowell when Jimmy Smith filed a petition in juvenile court for determination of dependency-neglect regarding his son, Brock Smith. Appellee Robert Lowell subsequently filed for divorce from appellant in chancery court. By temporary order filed October 22, 1993, the juvenile court found probable cause to believe the children were dependent-neglected. On that same day, the other two fathers, appellees Jackson and Lowell, filed motions to intervene in the juvenile proceeding and to consolidate their divorce actions with Smith's juvenile proceeding. All three fathers sought custody of their respective sons. On November 12, 1993, the juvenile court granted Lowell's and Jackson's motions to intervene and consolidated the three actions. After several hearings, the juvenile court concluded that the children were dependent-neglected and that custody of the children should be vested with their respective fathers. Appellant raises six points on appeal, but finding no error we affirm.

Appellant's first argument is that the juvenile court erred in assuming jurisdiction of appellee Smith's dependency-neglect petition. She asserts that the chancellor in the Smiths' divorce proceeding in the judicial district where the juvenile, Brock Smith, resided had previously determined that appellant should have custody of Brock, and this prior custody determination was open for modification and should be heard in that chancery court, rather than in the juvenile court. We find no error.

The juvenile courts of Arkansas are a division of chancery. *Schuh v. Roberson,* 302 Ark. 305, 788 S.W.2d 740 (1990). However, juvenile courts have exclusive original jurisdiction for proceedings in which a juvenile is alleged to be dependent-neglected. Ark. Code Ann. § 9-27-306(a)(1) (Supp. 1995). The juvenile code provides that petitions for dependency-neglect may be filed by any adult. Ark. Code Ann. § 9-27-310(b)(3)(A) (Supp. 1995). Appellant argues that the juvenile courts were not intended to assume jurisdiction over ordinary custody matters. The allega-

tions of dependency-neglect, however, separated this case from those involving ordinary custody matters. Moreover, the trial judge was correct in reasoning that the consolidation of the three divorce proceedings with the juvenile action was appropriate to prevent conflicting custody orders within the same judicial district. *See Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992).

Appellant next argues that the juvenile court erred in allowing appellees Lowell and Jackson to intervene in the dependency-neglect proceedings because the motion to intervene was untimely, insufficient, and improper. We disagree.

■■ The timeliness of the motion is a matter clearly within the trial court's discretion, and it will be reversed only where that discretion has been abused. *Employers Nat'l Ins. Co. v. Grantors to Diaz Refinery PRP Comm. Site Trust*, 313 Ark. 645, 855 S.W.2d 937 (1993). The factors that we consider regarding the timeliness of a motion to intervene are: (1) how far the proceedings have progressed; (2) any prejudice to other parties caused by the delay; and (3) the reason for the delay. *Cupples Farms Partnership v. Forrest City Prod. Credit Ass'n*, 310 Ark. 597, 839 S.W.2d 187 (1992). Here, the original petition for determination of dependency-neglect was filed by appellee Smith on September 14, 1993. Appellees Jackson and Lowell moved to intervene on the day the temporary order finding probable cause for dependency-neglect was entered, October 22, 1993, which was just over a month after the original petition had been filed. Appellant has not shown that there was any prejudice as a result of the intervention. We find that the juvenile court did not abuse its discretion in finding that the motion was timely.

■ With respect to the propriety of the intervention, Arkansas Rule of Civil Procedure 24(b) deals with permissive intervention. It provides that intervention may be permitted when the main action and an applicant's claim or defense have a question of law or fact in common. Here, the common facts and questions of law involved the proper care and custody of the three sons. As with timeliness, permissive intervention is also a matter within the trial court's discretion, and we will reverse only for abuse of that discretion. *Billabong Prods., Inc. v. Orange City Bank*, 278 Ark. 206, 644 S.W.2d 594 (1983). We do not find that the trial court abused its discretion in allowing the intervention.

With respect to the sufficiency of the motion to intervene, appellant argues that Arkansas Rule of Civil Procedure 24(c) requires that the motion state the grounds for intervention and that it be accompanied by a pleading setting forth the claim or defense for which intervention is sought. She argues that no separate pleading was attached to appellee Jackson's and Lowell's motions to intervene, and therefore the trial court erred in allowing the intervention. We disagree.

■ Arkansas Rule of Civil Procedure 24(c) provides in pertinent part:

> (c) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. *The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.*

(Emphasis added.) In *Polnac-Hartman & Assoc. v. First Nat'l Bank,* 292 Ark. 501, 731 S.W.2d 202 (1987), the supreme court affirmed the lower court's denial of intervention, which had been based in part upon the appellant's failure to file a pleading setting forth a claim or defense. In doing so, however, the supreme court explained:

> The failure to file a pleading with a motion to intervene was the subject of our decision in *Schact v. Garner,* 281 Ark. 45, 661 S.W.2d 361 (1983). In that case a party moving to intervene refused to file a pleading setting forth its claim or defense as required by Rule 24(c) but insisted on being allowed to intervene in the litigation. The trial court denied the motion, and this court affirmed, noting that the *movant had not shown entitlement to intervene as a matter of right or permissively. That, of course, is the purpose of filing a pleading. Without it, the court may not have any idea of the right asserted by the would-be intervenor. Although the appellant in this case attached the assignments to the motion, it did not state how or why they should be protected or what the claim of priority, if any, was. There was not even a statement telling the court that the assignments were, or were related to, the same properties which were the subjects of the foreclosure action.*

(Emphasis added.) Thus, the purpose of attaching to the motion a pleading that sets forth the claim or defense for which intervention

is sought is to inform the court of the right asserted by the would-be intervenor. Here, the motions to intervene contained statements of the relief sought, as well as affidavits setting forth facts and allegations in support thereof. Thus, the purpose of the rule was satisfied, and the trial court did not abuse its discretion in allowing the intervention. *See* 3B *Moore's Federal Practice* ¶ 24.14 (2d ed.) (general discussion regarding leeway that has been allowed by federal courts under Rule 24(c) of the Federal Rules of Civil Procedure, which is virtually identical to our Rule 24(c)).

Appellant's third argument is that the juvenile court erred in failing to appoint a guardian ad litem for the children and in failing to grant her motion for reconsideration on the guardian ad litem issue. At one of the early hearings, the juvenile judge stated that he would appoint a guardian ad litem for the children, but no such appointment was ever made. The parents of all three children were present with counsel at every hearing. Appellant did not complain or otherwise object to this oversight at or prior to the subsequent and final hearing on this matter held March 9, 1995. Rather, appellant merely requested in her motion to reconsider, filed March 14, 1995, that such an appointment be implemented before finalizing the order relating to custody. Accordingly, appellant cannot now argue this basis for reversal.

Appellant's fourth argument is that the juvenile court erred in denying her motion to restore custody of the minor children to her. In making this argument, appellant asserts: (1) that the fundamental goal of the juvenile code is to restore the family unit, and that the juvenile court's closing comments provided support for restoration of custody to appellant; (2) that with respect to Jimmy Smith and Brian Jackson, the only material change in circumstances that was proven was that appellant had changed for the better, a situation that should have resulted in a return of custody to her; and (3) that with respect to Robert Eugene Lowell, it was in his best interests to keep the siblings together in one household. We find no error in the juvenile court's refusal to restore custody to appellant.

On appeal from a chancery court case, we review the evidence de novo. We will not reverse the chancery court unless its decision is clearly contrary to a preponderance of the evidence. *Kerby* v. *Kerby*, 31 Ark. App. 260, 792 S.W.2d 364 (1990). A finding is clearly erroneous when, although there is evidence to support the trial court's decision, after looking at all the evidence the reviewing

court is left with a definite and firm conviction that a mistake has been committed. *Davis v. Davis*, 48 Ark. App. 95, 890 S.W.2d 280 (1995). As in all custody cases, the primary consideration is the welfare and best interests of the children involved. All other considerations are secondary. *Kerby*, 31 Ark. App. at 264. In these type cases, the chancellor must utilize to the fullest extent all powers of perception in evaluating witnesses, their testimony, and the best interests of the children. In no other type of case does the superior position, ability, and opportunity of the chancellor to observe the parties carry as much weight as those cases involving minor children. *Id.* Juvenile courts are a division of chancery, and therefore the same standards of review apply. *See Schuh v. Roberson*, 302 Ark. 305, 788 S.W.2d 740 (1990).

 Here, it is true that the trial court noted that appellant's attitude and demeanor had improved and that she had responded to the wake-up call as best she could. The court also stated, however, that she still had a "way to go." Dr. Alan Tuft, a clinical psychologist, provided expert testimony in this case. The court credited Dr. Tuft's testimony that he did not believe appellant had the ability to care for all three boys for an extended period of time. Moreover, the court determined that the evidence showed that the fathers provided safe, nurturing environments and that they were the more stable custodians for the boys. Appellant acknowledged that the fathers were excellent caretakers. Furthermore, there was ample testimony that the boys had customarily spent large amounts of time with their respective fathers, which undercuts appellant's argument that they should be together in one household. In short, a review of the entire record demonstrates that the trial judge's refusal to restore custody to appellant was not clearly erroneous.

Appellant's fifth argument is that the juvenile court erred in granting Smith's dependency-neglect petition and Jackson's and Lowell's motions because doing so was against the preponderance of the evidence. In particular, appellant argues that Dr. Alan Tuft's initial report to the court favored appellant's having custody of the children, and that the doctor's only initial concern was appellant's financial ability to keep the family together as a unit. She asserts that his opinion was turned upside down by the time he testified at the hearing because of "ex parte conferences" with persons friendly to the fathers. She also relies upon the fact that everyone who comes in contact with Josh, the oldest child, has nothing but good things

to say about him. She argues that because she has had Josh fifty percent of the time, her positive parenting abilities are proven by the fact that Josh has developed so well. She concludes that the lower court's findings to the contrary are therefore against the preponderance of the evidence. We disagree.

Appellant's assertions about "ex parte conferences" with Dr. Tuft are not supported by legal authority nor well-reasoned argument. We do not consider allegations of error absent citation to authority or convincing argument. *Bank of Cabot* v. *Bledsoe*, 9 Ark. App. 145, 653 S.W.2d 144 (1983). Moreover, even though Josh has developed well and is highly regarded, that fact alone does not support appellant's position that the trial court's findings regarding custody are clearly erroneous. As stated previously in this opinion, the trial court's findings were not clearly contrary to the preponderance of the evidence.

Appellant's final argument is that the juvenile court erred in unreasonably restricting her visitation rights with the children. Appellant's visitation with the children is very restricted. However, it is clear from the visitation schedule set forth in the final order that the lower court gave careful consideration to this issue. In reviewing chancery cases, we give due deference to the trial court's superior position to evaluate the evidence, and we will not reverse the lower court's findings unless they are clearly against the preponderance of the evidence. We find no clear error in this regard.

## ABSTRACTING ABUSES

We cannot ignore the abstracting abuses of appellant's counsel. Excessive abstracting is as violative of our rules as omissions of material pleadings, exhibits, and testimony. *Saint Paul Fire & Marine Co.* v. *Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). Appellant's abstract consisted of 402 pages. Much of this information could have been abridged or deleted for purposes of this appeal. This court's efforts to resolve this matter on appeal would have been aided considerably by the scrupulous adherence to our abstracting rule. See Arkansas Supreme Court Rule 4-2(a)(6).

Affirmed.

ROGERS and NEAL, JJ., agree.