Amanda LEWELLYN *v.* Tim LEWELLYN

02-752 93 S.W.3d 681

Supreme Court of Arkansas
Opinion delivered December 19, 2002

*Mobley Law Firm*, by: *Jeff Mobley*, for appellant.

*Dunham & Faught, P.A.*, by: *James Dunham*, for appellee.

ROBERT L. BROWN, Justice. Appellant Amanda Lewellyn-Fleming appeals the trial court's order awarding sole custody of their children to appellee Tim Lewellyn. She contends that changing joint custody of the children in both parents to sole custody in Tim constituted an abuse of discretion by the trial court and urges, instead, that she should have sole custody, as she relocates with a new husband from Russellville to Fayetteville. She further contends that substantial evidence does not exist for placing sole custody of the children in Tim and, thus, the trial court's finding that a change of custody was in the best interests of the children was clearly erroneous. We disagree on both points and affirm the trial court.

On June 18, 1988, Tim and Amanda Lewellyn married. They had two children during their twelve-year marriage: Kelly born in 1991, and Jake born in 1997. On December 5, 2000, the trial court granted the Lewellyns an uncontested divorce. With respect to child custody, the divorce decree provided that the parties would be bound by the court's standard visitation order, as modified by the decree. The divorce decree designated Amanda as the "custodial parent" and Tim as the "non-custodial parent." The decree also provided that Tim and Amanda would have joint custody of Kelly and Jake, with each parent enjoying physical custody of the children on alternating months, and, for the noncustodial parent, weekly visits at midweek and every other weekend

on off-months. Holidays were to be equally divided between the parties.

The divorce decree further contained an agreement that Kelly and Jake were to remain in the Russellville School District. To enforce this agreement, the decree contained a change-of-residency provision, which read:

> Neither of the parties shall remove their primary residence more than 25 miles from the Pope County Courthouse without prior approval of the opposite party. Any change of residence more than 25 miles from the Pope County Courthouse without approval of the opposite party shall constitute a change of circumstances to be considered by the Court with respect to the issue of custody.

The divorce decree prohibited overnight "romantic partner[s]" while the children were present.

On June 16, 2001, Tim filed a show-cause petition in the trial court in which he alleged that Amanda had an overnight romantic guest in violation of the divorce decree. Amanda answered and stated that she had married a man named Denis Fleming. She attached a copy of her marriage license in support of her answer. On July 24, 2001, Amanda filed an "*Exparte* (sic) Petition for a Change in Custody and Other Relief." She stated that Denis Fleming worked in Fayetteville and that she had found work in that city at a higher rate of pay—between $2.50 and $3.00 per hour—than what she had in Russellville. Citing the change-of-residency clause in the divorce decree, she argued that a material change in circumstances had taken place and asked for sole custody of the children and permission to move them to Fayetteville. In support of her petition, she argued for an emergency change in custody so that she could enroll Kelly and Jake in the Fayetteville public schools. Tim counterclaimed for custody of Kelly and asserted that the reason the change-of-residency clause was included in the divorce decree in the first place was because Kelly wished to stay in the Russellville school district. On August 8, 2001, the trial court denied Amanda's motion.

On August 9, 2001, Amanda filed a petition for a change in the custody of the children, repeating the reasons she had given in

the request for an *ex parte* order. Tim amended his counterclaim with an allegation that Mr. Fleming had mistreated Kelly, and asked for sole custody of both children.

On August 30, 2001, the trial court held a hearing on the parties' motions for change in custody. The first witness called was Dr. Dan Ott, a licensed psychologist, who testified for Tim by way of a deposition. He testified about several counseling sessions that he had had with the Lewellyns, both before and after their divorce. According to Dr. Ott, after the divorce, Tim brought Kelly to him for counseling to help her cope with the divorce. He then testified generally about the negative effects of divorce on children and related the tumultuous school experiences of Kelly. She attended Westside Elementary School in Jonesboro for the first grade, was home-schooled for second grade after the random murders occurred at that school, and then went to Crawford Elementary in Russellville for the third grade. He testified that Kelly expressed a desire to say in the Russellville School District.

Dr. Ott also testified that he was concerned about the emotional impact on Kelly in moving to Fayetteville and adjusting to life there. He expressed concern about the new environment in Fayetteville with Mr. Fleming, and stated that Kelly had told him of her conflict with Mr. Fleming. He further testified that Kelly complained that her mother spent excessive time on her computer. Dr. Ott recommended that the court give "serious consideration" to Kelly's desire to stay in Russellville.

Amanda testified on her own behalf and told the court that her new husband worked as a vice-president of a real estate and construction firm and that she and her husband lived in a two-bedroom apartment in Fayetteville. She characterized Kelly and Jake as "obedient, polite, very loving children." She expressed a willingness to afford Tim liberal visitation. On cross examination, she admitted that the children slept in a converted computer room in the new apartment and stated that she did not agree with Dr. Ott's assessment of the effect a move would have on Kelly. She admitted to having some behavioral problems with Kelly and added that she had taken her to another therapist to help deal with the stress of divorce.

Betty Hefner, Kelly and Jake's day-care provider, testified for Amanda. She told the court that she had known Tim and Amanda for two years. She characterized Amanda as a good mother and added that she had seen Kelly and Jake interact with Mr. Fleming and that they seemed to like him. On cross examination, she characterized Tim as a good father who was concerned and loving toward his children. She related one incident when Kelly became sick at day care and Tim decided to leave her there. She testified that the children seemed settled and happy in Russellville.

Gretchen Douthit, a licensed professional counselor, testified for Amanda. She testified that Amanda's goal in counseling was to develop a better relationship with Kelly following the divorce. In her opinion, Kelly showed progress over the course of the sessions in resolving problems related to the divorce. She concluded that Amanda was a "very concerned, involved parent," who was worried about a "temporary deterioration in her relationship with her daughter." She said that they were able to resolve some of the problems between Kelly and Amanda.

Two of Tim's coworkers from Waste Management testified on his behalf. The first was Leslie Bartlett. She testified that Tim had a flexible work schedule at his job, which was oriented around his obligations to Kelly and Jake. She added that she considered Tim trustworthy and that she had let Tim watch her children from time to time. The second coworker was Wesley Sutherlin, a comptroller at Waste Management. He testified that Tim's work schedule was a flexible eight-to-five position and that Tim's salary was approximately $38,000 a year.

Tim testified on his own behalf and referred to the custody arrangement and the do-not-relocate provision in the divorce decree. He related an incident where, according to Kelly, Mr. Fleming had dangled her over a balcony. He said that he found out that his wife had remarried by calling the Washington County Circuit Clerk. He testified that Kelly had friends in her class at Crawford Elementary in Russellville. He told the court about the activities that he engaged in with his children, including trips to vacation spots like Sea World and Silver Dollar City. On cross

examination, he denied having anything to do with Dr. Ott's opinion that Kelly should stay in the Russellville School District.

On August 30, 2001, the trial court issued a letter opinion granting sole custody of the two children to Tim. The court concluded in its opinion that it would be in the best interest of the children to stay with Tim. Specifically, the court wrote: "My decision essentially is based on the fact that I believe that these children have had enough trauma and change in their lives over the last year and a half that a further relocation to a different area would be extremely traumatic to them." The court stated that Amanda would be entitled to standard visitation and would be required to pay child support. The standard visitation schedule entitled the non-custodial parent to visitation every other weekend, on the parent's birthday, six weeks in the summer, and alternating holidays.

The trial court issued an order to this effect on September 11, 2001, and a *nunc pro tunc* followed on October 12, 2001. This second order specified that the children would be exchanged for visitation purposes at the town of Alma. The order further directed Amanda to produce pay stubs so that her child support could be set. Amanda timely filed a notice of appeal to our Court of Appeals.

In an unpublished opinion, the Court of Appeals reversed the trial court's orders. *See Lewellyn v. Lewellyn*, 2002 WL 1376214 (Ark. App. June 26, 2002). The court of appeals first held that the trial court erred in finding that Amanda's relocation to Fayetteville, by itself, was a change in circumstance which affected the best interest of the children. The court of appeals then held that the trial court should have analyzed the case not as a change-of-custody case, but as a relocation case. It remanded the case to the trial court and directed that court to reexamine the matter in light of the relocation factors adopted in *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994). Tim petitioned for review to this court, which we granted.

*I. Procedural Points*

*a. Standard of Review.*

■ ■ When this court grants a petition to review a deci-
sion by the court of appeals, this court reviews the appeal as if it
had been originally filed in this court. *E.g., Marcum v. Wengert,*
344 Ark. 153, 40 S.W.3d 230 (2001). This court has traditionally
reviewed matters that sounded in equity *de novo* on the record
with respect to fact questions and legal questions. *Con-Agra, Inc. v.
Tyson Foods, Inc.,* 342 Ark. 672, 30 S.W.3d 725 (2000); *Ferguson v.
Green,* 266 Ark. 556, 587 S.W.2d 18 (1979). We have stated
repeatedly that we would not reverse a finding by a trial court in
an equity case unless it was clearly erroneous. *Con-Agra, Inc. v.
Tyson Foods, Inc., supra.* We have further stated that a finding of
fact by a trial court sitting in an equity case is clearly erroneous
when, despite supporting evidence in the record, the appellate
court viewing all of the evidence is left with a definite and firm
conviction that a mistake has been committed. *Id.* These com-
mon law principles continue to pertain after the adoption of
Amendment 80 to the Arkansas Constitution, which was effective
on July 1, 2001.

*b. Final Order.*

Tim, as appellee, argues a procedural point for dismissal of
this appeal. He contends that this court lacks appellate jurisdiction
due to the absence of a final order. According to Tim, the trial
court's *nunc pro tunc* order, dated October 12, 2001, is not final
because it did not fix the amount of Amanda's child support pay-
ments but instead directed her to produce pay stubs so that the
amount could be determined in the future. In support of his posi-
tion, Tim cites *Beverly Enterprises-Arkansas v. Hiller,* 341 Ark. 1, 14
S.W.3d 487 (2000) (stating the rule that a final order is a jurisdic-
tional requirement for appellate review), as well as Arkansas Rule
of Civil Procedure 54(b) (stating that an order which adjudicates
fewer than all of the claims in an action is not an appealable absent
a required certificate from the trial court).

■ ■ Tim's argument, however, overlooks our Rule of
Appellate Procedure—Civil 2(d) ("All final orders awarding cus-

tody are appealable final orders."). We have interpreted Rule 2(d) to permit "an appeal from any order that is final as to the issue of custody, regardless of whether the order resolves all other issues." *Ford v. Ford*, 347 Ark. 485, 490, 65 S.W.3d 432, 436 (2002). The trial court's order changes custody from joint custody in both parents to sole custody in Tim and, thus, is final on the issue of custody. We hold the order is final for purposes of this appeal.

### c. *Procedural Bar.*

■ Tim next argues that Amanda's petition to change custody before the trial court admitted a material change in circumstances and as a result, the custody issue is not preserved for appellate review. Tim appears to be contending that Amanda cannot argue a change in circumstances at the trial court and then claim no change of circumstances at this level. We take issue with Tim's characterization of what occurred before the trial court. Both parties litigated the issue of a material change in circumstances to the trial court and both parties presented evidence on that issue. Amanda maintained that her move to Fayetteville constituted a material change in circumstances, which justified placing sole custody in her. Tim argued that the relocation of one parent in a joint-custody divorce resulted in a change in circumstances. The trial court disagreed with Amanda and found that her relocation justified changing the relationship with the children from joint custody in both parents to sole custody in Tim. The fact that Amanda may argue on appeal that a material change of circumstances has not occurred does not mean that the issue is not preserved. We hold that Tim's preservation argument has no merit.

### II. *Custody*

### a. *Change in Circumstances.*

■ For a trial court to change the custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001).

Amanda's first contention on appeal is that there was no material change in circumstances from the time of the divorce decree sufficient to set aside joint custody in the parents and to place sole custody in Tim. She argues, as a specific matter, that her relocation, standing alone, cannot constitute a material change in circumstances. For authority, she cites the court to *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). *See also Gerot v. Gerot*, 76 Ark. App. 138, 145-146, 61 S.W.3d 890, 896 (2001) ("[R]elocating in order to obtain better employment itself does not constitute a material change in circumstances."); *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999) (holding that the combined effect of the mother's move, the desires of the children to stay in their original location, and the long passage of time between the divorce decree and the modification, amounted to a material change in circumstances.).

■ The problem with Amanda's case authority is that the *Jones* case did not involve joint custody in the parents where physical custody alternated on a month-to-month basis. Indeed, the *Jones-Gerot-Hollinger* line of cases all involved mothers with sole custody of a child or children who sought to relocate. That is not what we have in the case at hand. Here, both parents had custody, and each parent petitioned for sole custody, with Amanda being the parent who wished to relocate.

■ ■ Joint custody has traditionally been premised on the mutual ability of the parents to cooperate in decisions that affected the child's welfare. Our court of appeals has recognized this fundamental principle. *See Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998). In the instant case, however, that ability to cooperate has eroded due to Amanda's remarriage and relocation to Fayetteville. Kelly and Jake are school-age children and, clearly, joint custody is no longer practical with Tim and Amanda living in different cities. We have no doubt that a material change in circumstances has occurred. We next inquire into what now is in the best interest of the children with respect to their custodial parent and residence.

b. *Best Interest of the Children.*

Amanda contended in her Reply Brief that the trial court should have employed the factors set out in *Staab v. Hurst, supra*, in

its custodial analysis. The trial court had not used the *Staab* factors in any sense but instead had analyzed the case as purely one involving change of custody. The trial court was correct.

The facts in *Staab v. Hurst, supra,* involved a custodial mother who wished to relocate with her child from Fort Smith to Wellington, Texas for a better educational opportunity that would lead to a better job. At issue in *Staab* was whether the non-custodial father would effectively be denied visitation because the geographical distance from the mother's new home rendered visitation impossible or impractical. The court of appeals, following a decision from the New Jersey Superior Court (*D'Onofrio v. D'Onofrio,* 144 N.J. Super. 200, 365 A.2d 27 (N.J. Super. Ch. Div. 1976), *aff'd* 144 N.J. Super. 352, 365 A.2d 716 (N.J. Super. Ct. App. Div. 1976)), adopted a framework for deciding such cases. That framework placed the burden on the custodial parent to show some real advantage to the new family unit resulting from the move. If the custodial parent met that threshold burden, then the trial court should analyze the case using certain factors:

> 1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non- custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent.

*Staab,* 44 Ark. App. at 134, 868 S.W.2d at 520.

The *Staab* factors are irrelevant to the instant case in that visitation between Fayetteville and Russellville is neither impossible nor impractical. The trial court ordered the exchange of the children to take place at Alma, which is roughly where I-40 and I-540 intersect between Russellville and Fayetteville. The time of travel from either city to Alma was not objected to as being unduly burdensome. This case is simply not a relocation case where the *Staab* factors should be applied. Moreover, the

*Staab* case involved relocation of the custodial mother to Texas, which was objected to by the non-custodial father. Those facts are distinguishable from the case at hand where joint custody is the issue.

### III. Sufficient Evidence

We next turn to Amanda's argument that the trial court clearly erred in finding that transferring sole custody to Tim was in the best interest of the children.[1] We hold that he did not.

The following evidence was presented to the trial court in support of placing sole custody of the children in Tim:

- Kelly's elementary education had taken place in Jonesboro, at home, and then in Russellville. Changing schools again and residence would have a negative emotional impact on Kelly.

- Both children appeared happy and settled in Russellville, and Kelly desired to stay there.

- There had been some problems between Kelly and Mr. Fleming.

- Tim was a fit father and had the flexibility at work to take care of both children.

We cannot say that in light of this evidence, the trial court clearly erred (1) in finding that the children had had enough trauma and change in their lives over the last year and a half or, (2) in concluding that an award of sole custody to Tim was in the best interest of the children.

Affirmed.

---

[1] Amanda couches her argument in terms of both an abuse of discretion by the trial court and clear error. We conclude that the standard is whether the trial court was clearly erroneous. *See, e.g.*, *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999).