Susan L. REBSAMEN *v.* Richard L. REBSAMEN

CA 02-1384 107 S.W.3d 871

Court of Appeals of Arkansas
Division II
Opinion delivered May 28, 2003

*Skokos, Bequette & Billingsley, P.A.*, by: *Keith I. Billingsley*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Sam Hilburn* and *Susan M. Coleman*, for appellee.

WENDELL L. GRIFFEN, Judge. This appeal arose from an order modifying visitation after granting relocation to appellant, Susan L. Rebsamen Stockton. The sole issue is whether the trial court was clearly erroneous in structuring the visitation schedule concerning the parties' eight-year-old son, Dalton, after

appellee, Richard L. Rebsamen, consented to, or at least waived any objection regarding appellant's relocation out of state. We affirm.

The parties obtained a divorce from each other on October 6, 1999. Appellant received custody of Dalton, subject to certain visitation privileges of appellee. Appellee exercised visitation regularly every other weekend, alternate holidays, and six weeks during the summer break. Appellant remarried in the spring of 2002 and relocated, within Arkansas, to Fayetteville. However, appellant's husband recently obtained new employment in the state of Virginia. Because of the new job, appellant, her husband, and Dalton moved to Winchester, in the very northern tip of Virginia. Due to her husband's change in employment, appellant's yearly family income increased from approximately $48,000 to about $82,000 per year. Appellant's husband does not have any children of his own. In contrast, appellee, residing in Nashville, Arkansas, made $35,000 per year. Appellee also remarried, and his wife has three children of her own. There is no evidence in the record pertaining to appellee's wife's income, if any. Appellant's and appellee's parents continue to reside in Arkansas as well.

Appellee initially opposed appellant's motion to relocate, but later withdrew his objection. At the hearing, however, appellee asserted that he would like to see Dalton as often as possible. In return, appellant expressed concerns about the flight schedule, frequent air travel, possible complications due to connecting flights, and other travel-related concerns. Appellant's new home is located about two hours' drive-time from the Baltimore airport, from where Dalton could board a nonstop flight to Little Rock on Southwest Airlines. The flight departs at 7:30 a.m. In order to arrive in time, appellant would have to depart from home, in order to bring Dalton to the airport in time, before 4:30 a.m.

Based on these facts, and appellee's withdrawal of his objection to the relocation, the trial court granted the relocation and issued a new visitation order, emphasizing one particular factor under *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), namely whether there will be a realistic opportunity for visitation in lieu of the weekly pattern that can provide an adequate basis for

preserving and fostering the parent relationship with the noncustodial parent. In relevant parts, the trial court stated specifically:

> [Appellee] shall have summer visitation from July 1 until the Friday before the fall school semester reconvenes. This schedule will continue as long as Dalton is playing baseball. If the child does not participate in baseball, then summer visitation will commence three days after the school recesses for the summer break and will continue until the Friday before the fall semester reconvenes. Child support shall abate by fifty-percent during summer visitation;

> [Appellee] shall have every Spring Break from the Friday that school lets out for the break until the Sunday before school starts;

> . . .

> Every year [after 2002], [appellee] shall have Dalton from the time school lets out for the Christmas holiday until the evening before school reconvenes for the spring semester. When [appellant] is in Arkansas, she will have Dalton Christmas Eve from 6:00 p.m., December 23 until 7:00 p.m. on December 24.

> [Appellee] shall have the minor child from noon on the Tuesday before Thanksgiving until Monday after Thanksgiving. If [appellant] is in the state of Arkansas, she will have Thanksgiving from Wednesday evening until Thanksgiving at 7:00 p.m. in even-numbered years. If [appellant] is in the state, she shall be entitled to one day of the weekend of Thanksgiving break in odd-numbered years;

> [Appellee] shall have the child from the Friday before Memorial Day until Memorial Day;

> Per the 2002-2003 school calendar, [appellee] will have the minor child as follows:

> (i) Friday, October 18, 2002, until Sunday, October 20.

> (ii) Friday, November 1, 2002, until Tuesday, November 5.

> (iii) Friday, January 17, 2003, until Tuesday, January 21.

> (iv) Friday, February 14, 2003, until Monday, February 17.

> The visitation referenced hereinabove shall be revised each year in accordance with the child's school calendar and visitation shall coincide with all extended school breaks, to the extent they exist
> . . . .

In addition to the visitation set out above, [appellant] shall make the minor child available to [appellee] at any times that she has the child in Arkansas. In the event [appellee] travels to the state of Virginia, upon proper notice, he shall be entitled to visit with Dalton during any trip, holiday or vacation travel; and

In the event that [appellee] has a family event, wedding or funeral, which he would like the child to attend, the parties shall work to arrange for the child to be present. The transportation expense and arrangements for any additional visitation of this nature shall be the responsibility of [appellee].

. . .

[T]he Court orders [appellant] to be responsible for the transportation expense, other than those areas or times that [appellee] has a special need or event referenced [above].

From this order arises the present appeal.

### Visitation After Uncontested Relocation Out of State

On appeal, appellant solely asserts that the trial court acted clearly erroneously when it devised and ordered the above visitation schedule. We review cases such as this *de novo* and reverse only when the trial court's findings are clearly erroneous. *Holland-sworth v. Knyzewski*, 78 Ark. App. 190, 79 S.W.3d 856 (2002). A finding is clearly erroneous when, despite the existence of evidence supporting it, we have the definite and firm conviction, based on the entire evidence, that a mistake was committed. *Id.*

While there is little case law before us that distinctly applies to the current situation — notably not one involving a disputed relocation, but solely a disputed visitation schedule within the context of an out-of-state relocation — our court in *Staab v. Hurst*, 44 Ark. App. 128, 133, 868 S.W.2d 517, 519 (1994), made some relevant observations. After a divorce and an initial custody determination, the determination of a child's best interest cannot be made in a vacuum, but requires that the interests of the custodial parent also be taken into account. *Id.* Our court quoted, as a decisive case, *D'Onofrio v. D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27, *aff'd* 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976):

The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together.

The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually, and to the way they relate to each other and function together is obviously in the best interest of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

*Id.* Consequently, our court arrived at five factors to be considered in order to accommodate the compelling interests of all the family members:

(1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent.

*Id.* at 134, 868 S.W.2d at 520; *see also Hollandsworth v. Knyzewski, supra* (Griffen, J., concurring) (emphasizing the necessity to apply the *Staab* factors in deciding relocation cases).

█ Our supreme court found the *Staab* factors to be irrelevant in a case where visitation between Fayetteville and Russellville was neither impossible nor impractical, where neither side objected to the time of travel necessary to implement visitation as being unduly burdensome, and where joint custody was at issue. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002). The supreme court concluded that the *Lewellyn* case is "simply not a relocation case where the *Staab* factors should be applied." *Id.* at 357, 93 S.W.3d at 688. Indeed, in the case now before us the question also arises whether the *Staab* analysis actually applies. Appellee withdrew his objection to appellant's relocation. Thus, we do not have before us an actual relocation case. As such, we do not have to decide whether relocation ought to be granted. Upon reading the *Staab* factors, and their subsequent applications

throughout Arkansas case law, it appears, however, that they apply to the issue whether relocation should be granted or not — and do not apply to disputes solely focusing on visitation.

■ Of the five *Staab* factors, only the fifth factor addresses visitation, and even then, only as one factor to be considered in deciding relocation itself. However, it appears feasible to accept the fifth factor of *Staab* as a general statement of policy, namely in that visitation in a relocation context should attempt to provide for a "realistic opportunity for visitation" for "an adequate basis for preserving and fostering the parent relationship with the non-custodial parent." Thus, we recognize that it has been part of Arkansas's jurisprudence and policy to consider the preservation and maintenance of a parent-child relationship between the child and the noncustodial parent.

In a recent case, we decided that the trial court did not clearly err in scheduling visitation between two parties located in Fayetteville and El Dorado, Arkansas. *Haas v. Haas*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). In that case, the trial court ordered summer visitation with the noncustodial parent beginning one week after school was dismissed and ending ten days prior to school starting for the fall semester. The custodial parent, however, retained visitation during the first weekend of July. The trial court also allowed the noncustodial parent every spring break and alternate weekends. In conclusion, we stated that "while we might well have restructured visitation differently, particularly to prevent such long periods in the summer when [the minor] is away from his mother, we are not convinced that the trial court erred in this regard." *Id.* at 412, 97 S.W.3d at 427.

■ In the case at bar Dalton presently plays baseball and thus, under the existing visitation order now on appeal, remains at appellant's home until the beginning of July, whereas the minor in *Haas* was to spend even more time at the noncustodial parent's household during the summer. Yet, in *Haas* we did not find ourselves in a position to disagree with the trial court's decision. Furthermore, while it is true that the present visitation order provides for Dalton to spend virtually every holiday with appellee, each spring break, and one weekend each month in which there is no holiday or other school vacation, the order also provides that Dalton spends all remaining time at appellant's household in Virginia.

Even though appellee is to receive his son on all holidays and school breaks, except those summer weeks during which Dalton still plays baseball, appellee unarguably gets to spend significantly less time with Dalton than appellant—whose choice it was to move to Virginia. Thus, there is no clear error.

 In so holding, we are not unmindful of our stated policy, adopted from the New Jersey case of *D'Onofrio*, that the child now belongs to a new family unit and that we must determine visitation and changes of visitation in the context of what is best for the new family unit. *Staab v. Hurst, supra*. But we also must balance the needs of the noncustodial parent with that of the new family unit, especially if we, by analogy to a proper relocation case, consider the fifth *Staab* factor, according to which we always must consider the feasibility of maintaining visitation with the noncustodial, nonmoving parent so as to preserve the bond between noncustodial parent and child before relocation can be allowed. Even though the present case does not raise the issue of relocation per se, we find the reasoning behind the fifth *Staab* factor persuasive in the instant case as well. The need to preserve the relationship between the noncustodial parent and the child is not somehow less because the relocation itself occurred uncontested and is not now on appeal before us.

 Furthermore, we also acknowledge that a visitation dispute never should disregard the best interest of the child. *Haas v. Haas, supra*. Appellant is correct when she worries about a young child frequently flying between Baltimore and Little Rock, but we are not convinced that such concerns outweigh the importance of fostering a good and working relationship between Dalton and appellee, his father.

Finally, we recognize that different versions of visitation could have been created, but the issue before us is whether the trial court clearly erred in establishing the specific visitation schedule now before us, not whether we could have, or would have, arrived at a different visitation schedule. *See Haas v. Haas, supra*. The issue before us is not whether we like the visitation schedule. We also remind the parties that the trial court's order provides for an alternative visitation schedule in the event that appellant chooses to celebrate certain holidays, such as Thanksgiving and Christmas, in Arkansas — where Dalton's grandparents, appellant's parents, reside

as well. According to that alternative visitation schedule, appellant can spend parts of those holidays with Dalton.

In light of the existing economic differences between the parties, we also find no clear error in the trial court's determination that, on the whole, appellant should be responsible for the transportation cost of visitation, except in such cases where appellee's specific family needs might require additional visitation not specifically ordered. After all, it was appellant who requested the relocation in the first place, and she does not appear to challenge the financial aspects of the order.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.