ANDERSON v ANDERSON

Docket No. 101533. Submitted June 9, 1988, at Grand Rapids. Decided
    July 20, 1988.

    Sharon Anderson was divorced from Thomas Anderson in 1979
    and was awarded custody of their minor child. Sharon Ander-
    son remarried. Thomas Anderson petitioned for a change of
    custody and Sharon Anderson moved for permission to remove
    the minor child from the state. After a hearing, the Ottawa
    Circuit Court, James E. Townsend, J., ordered the divorce
    judgment to be modified to allow the removal of the minor
    child. Thomas Anderson appealed.

    The Court of Appeals *held:*

    A trial court in ruling on a motion by a parent who has
    custody of a minor child under a judgment of divorce for
    permission to remove the child from the state must consider (1)
    whether the prospective move has the capacity to improve the
    quality of life for both the custodial parent and the child, (2)
    whether the move is inspired by the custodial parent's desire to
    defeat or frustrate visitation by the noncustodial parent and
    whether the custodial parent is likely to comply with the
    substitute visitation orders where he is no longer subject to the
    jurisdiction of the courts of this state, (3) the extent to which
    the noncustodial parent who resists the move is motivated by
    the desire to secure a financial advantage in respect of a
    continuing support obligation, and (4) the degree to which the
    court is satisfied that there will be a realistic opportunity for
    visitation in lieu of the weekly pattern which can provide an
    adequate basis for preserving and fostering the parental rela-
    tionship with the noncustodial parent if removal is allowed.
    Proof is to be by a preponderance of the evidence. The court

REFERENCES

Am Jur 2d, Divorce and Separation §§ 988, 989.
Court-authorized permanent or temporary removal of child by
    parent to foreign country. 30 ALR4th 548.
Propriety of awarding custody of child to parent residing or intend-
    ing to reside in foreign country. 20 ALR4th 677.
Nonresidence as affecting one's right to custody of child. 15 ALR2d
    432.

applied the proper test and made proper findings based on the evidence.

Affirmed.

PARENT AND CHILD — CHILD CUSTODY — MOTION TO REMOVE CHILD.

A trial court in ruling on a motion by a parent who has custody of a minor child under a judgment of divorce for permission to remove the child from the state must consider (1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child, (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he is no longer subject to the jurisdiction of the courts of this state, (3) the extent to which the noncustodial parent who resists the move is motivated by the desire to secure a financial advantage in respect of a continuing support obligation, and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed; proof is to be by a preponderance of the evidence.

*Paul M. Ladas,* for plaintiff.

*Persinger & Farmer, P.C.* (by *Floyd H. Farmer, Jr.*) for defendant.

Before: MAHER, P.J., and MURPHY and R. B. BURNS,* JJ.

PER CURIAM. Defendant appeals as of right from the order of the Ottawa Circuit Court allowing plaintiff (defendant's ex-wife) to remove their minor daughter Melissa (born June 8, 1977) from the State of Michigan. We affirm.

By an August 27, 1979, judgment of divorce, the parties' marriage was terminated and plaintiff was awarded custody of Melissa. However, defendant was granted very liberal visitation rights ("at all

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

reasonable times upon reasonable notice" and alternate holidays). To their credit, the parties have been cooperative with each other as to matters concerning Melissa, including visitation. Defendant has exercised his visitation rights diligently and has fostered a strong relationship with the child.

In February of 1987, defendant apparently heard unsubstantiated rumors that plaintiff intended to remove Melissa from this state (which plaintiff adamantly denied) so he filed a motion with the court for change of custody. Later, plaintiff did in fact file a motion requesting permission to remove Melissa to Arizona. Plaintiff had remarried six years earlier and her present husband, Mr. Brilliant, hoped to obtain employment in Arizona. Also, plaintiff and Mr. Brilliant desired to move to that state because his parents currently reside there.

Prior to the hearing, defendant conceded that he could not prove there had been a material change of circumstances which warranted a change in custody. The case therefore proceeded on the issue whether plaintiff should be allowed to remove Melissa to Arizona.

The hearing was held on May 1, 1987. After both parties presented compelling evidence in support of their positions, the trial court stated that its decision "is probably one of the most difficult ones I have had of this type in a long time." Having to make a decision, though, the court granted plaintiff's motion to remove Melissa to Arizona. It first found that neither party was motivated by any improper purpose in seeking or opposing the change of domicile. However, it went on to find that the move would further Mr. Brilliant's career, which would in turn improve the family situation. With an increase in Mr. Bril-

liant's income, plaintiff could reduce her work hours and spend more time with the children (the Brilliants also have a minor son by adoption). The increased income was also necessary to meet the children's added needs. The court recognized that defendant would have less frequent contacts with Melissa but believed this would be offset by allowing extended visitations several times throughout the year. Accordingly, defendant was granted visitation for six weeks during the summer, for the entire Christmas vacations, for alternate spring vacations, and for any other times that could be arranged. The costs of transportation were to be divided equally between the parties. Finally, the court noted that, contrary to what the friend of the court's report indicated, Melissa was not opposed to the move to Arizona.

An order modifying the divorce judgment and allowing plaintiff to remove Melissa from the state was entered on June 9, 1987. Defendant claims his appeal as of right from that order. The sole issue on appeal is whether the trial court erred in allowing the removal of Melissa.

In reviewing a custodial parent's request to change the domicile of a minor child, panels of this Court have most recently adopted the test formulated in *D'Onofrio v D'Onofrio,* 144 NJ Super 200; 365 A2d 27 (1976). See *Mills v Mills,* 152 Mich App 388, 394-395; 393 NW2d 903 (1986); *Dick v Dick,* 147 Mich App 513, 516-517; 383 NW2d 240 (1985); *Bielawski v Bielawski,* 137 Mich App 587, 591-592; 358 NW2d 383 (1984); *Scott v Scott,* 124 Mich App 448, 451-452; 335 NW2d 68 (1983); *Henry v Henry,* 119 Mich App 319, 323; 326 NW2d 497 (1982). Those cases rejected the "best interests of the child" test applied in the earlier cases of *Watters v Watters,* 112 Mich App 1, 11; 314 NW2d 778 (1981), and *Hutchins v Hutchins,* 84 Mich App

236, 238; 269 NW2d 539 (1978). For the reasons discussed in the more recent line of cases, we believe that *D'Onofrio* is the better test and that the trial court properly applied it in the instant case.

The *D'Onofrio* test provides that, when a trial court rules on a custodial parent's motion to remove a minor child from the state, it must consider: (1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage in respect of a continuing support obligation; and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed. 144 NJ Super 206-207. To support a removal petition, the moving party need only show that such is warranted by a preponderance of the evidence. The clear and convincing evidence standard, applicable to change of custody cases, has no application. *Mills, supra,* pp 393-394. A lower court's decision to allow removal of the child from the state will not be reversed on appeal absent an abuse of discretion. *Id.,* p 394; *Scott, supra,* p 451. But see *Dick, supra,* p 516 (wherein this Court, citing the statute and a case pertaining to change of custody disputes, applied a different standard of review).

In the instant case, defendant challenges only the trial court's findings as to factors (1) and (4) of the *D'Onofrio* test. He does not dispute the findings regarding factors (2) and (3). We will therefore limit our review accordingly.

Contrary to what defendant contends, we do not believe the court considered the interests of Mr. Brilliant to the exclusion of the entire family's interests in general and Melissa's interests in particular. The court did place great emphasis on career opportunities for Mr. Brilliant in Arizona, but it did so only to illustrate the benefits to the entire family unit. The move would improve the family's financial situation. This was particularly important because the Brilliants recently adopted a six-year-old boy and because the financial needs of the children would likely increase as they grew older. Also, the added income would allow plaintiff to cut back on her work hours and spend more time raising the children—which she expressed a desire to do. Defendant cannot reasonably dispute that this would be a great benefit to the family unit. We believe plaintiff met her burden of proving by a preponderance of the evidence that the quality of hers, Melissa's, and the entire family's lives will be improved by the move to Arizona.

Defendant next argues that the trial court erred in finding that an adequate, alternate visitation schedule was available. He asserts that the extended periods of visitation under the new plan can in no way compare with the frequent visitations (alternate weekends and whenever else possible) under the old plan. We disagree.

*D'Onofrio* does not require that the new visitation plan and the old visitation plan be equal in all respects. Dare to say, such equality could never be possible. *D'Onofrio* requires only that there be a realistic opportunity for preserving and fostering

the parental relationship previously enjoyed by the noncustodial parent. Here, in place of having Melissa on alternate weekends (and other, impromptu times), defendant has the child for six weeks during the summer, the entirety of each Christmas vacation, alternate spring vacations, and other times which can be arranged. Perhaps the extended periods of visitation will foster, not hinder, an even closer father-child relationship. As the *D'Onofrio* Court stated:

> It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year, where the father is in constant and exclusive parental contact with the children and has to plan and provide for them on a daily basis, may well serve the paternal relationship better than the typical weekly visit which involves little if any exercise of real paternal responsibility. [144 NJ Super 207.]

Affirmed.