OVERALL v OVERALL

Docket No. 157256. Submitted December 22, 1993, at Lansing. Decided February 7, 1994, at 9:50 A.M.

Vanessa Overall brought an action in the Genesee Circuit Court against Simuel L. Overall, seeking a divorce. The court, Judith A. Fullerton, J., entered a judgment of divorce that included an order granting joint legal custody of the parties' minor child but giving primary physical custody to the defendant. The court further granted the defendant permission to move the child to Georgia. The plaintiff appealed, claiming that the court erred in granting primary custody to the defendant and in permitting the defendant to move the child to Georgia.

The Court of Appeals *held:*

1. A trial court, in determining the best interests of a child in a custody dispute, must determine whether there is an established custodial environment. The court properly based its finding that there was no established custodial environment on a previously entered custody order and the stipulation of the parties that their shared custody during the separation period would not create an established custodial environment with either parent. The findings of the court concerning the question of an established custodial environment were sufficient. Further, if there were an established custodial environment, it was with the defendant.

2. The court clearly considered and made the required findings of fact concerning each of the statutory factors set forth in § 3 of the Child Custody Act.

3. The court, in deciding to grant primary physical custody of the child to the defendant, did not make findings that were against the great weight of the evidence, abuse its discretion, or commit an error of law. The court properly concluded that the parties were essentially equal with respect to most of the factors and that the defendant's superior ability to provide necessary support of the child outweighed the interest of maximizing the child's contact with his half brothers.

4. The decision of a trial court to allow a parent to remove a

REFERENCES

Am Jur 2d, Divorce and Separation §§ 974, 981, 989.

See ALR Index under Custody and Support of Children.

child from the state is reviewed to determine whether the trial court abused its discretion. There is neither legal authority nor any compelling reason to justify the plaintiff's assertion that the proper standard of review should be whether the court's findings were clearly erroneous. The court did not abuse its discretion in finding that the move would improve the quality of the child's life, was not intended to frustrate the plaintiff's visitation rights, and was not intended to secure to the defendant some financial advantage or in concluding that there would be adequate opportunity for the plaintiff to preserve and foster her parental relationship with the child during the periods the child resided with her.

Affirmed.

1. PARENT AND CHILD — CHILD CUSTODY — ESTABLISHED CUSTODIAL
ENVIRONMENT — STIPULATIONS.

A trial court in a child custody dispute may base its determination that there is no established custodial environment on a stipulation of the parents that a shared custody arrangement would not create any established custodial environment in either parent.

2. PARENT AND CHILD — CHILD CUSTODY — REMOVAL FROM STATE —
APPEAL — STANDARD OF REVIEW.

The standard of review of a determination of a trial court in a child custody dispute to permit a parent to remove a child from the state is whether the trial court abused its discretion.

*Earl R. Spuhler,* for the plaintiff.

*Kathleen Buckley,* for the defendant.

Before: SHEPHERD, P.J., and MCDONALD and JANSEN, JJ.

SHEPHERD, P.J. Plaintiff, Vanessa Overall, appeals as of right a September 21, 1992, judgment of divorce that included a provision granting primary physical custody of the parties' minor child to defendant, Simuel L. Overall. We affirm the judgment of the trial court in all respects.

The parties were married in September 1989 and became separated by January 1991. A child was born of the union on February 5, 1990. Plain-

tiff also has two other children from a previous marriage.

Plaintiff has a masters degree in communications and, at the time of trial, was employed as a teacher for the learning disabled. Plaintiff also did some modeling during the summer months. Defendant was employed as a musician for Capital Records, which required him to travel frequently.

Plaintiff alleged that she left the marital home because defendant physically abused her in front of the children. Defendant acknowledged that he had slapped her once, but denied any other abuse.

After plaintiff left the marital home, the parties remained separated for only a few weeks. Then, plaintiff allowed defendant to move in with her because he had been experiencing illness, apparently chronic fatigue syndrome. With regard to the issue of defendant's health, plaintiff alleged that defendant's illness had affected him so seriously that he began to have delusions that parasites were living underneath his skin. Plaintiff alleged that defendant had stuck himself with a syringe and had cut himself with a razor blade in order to rid himself of the parasites. However, defendant vehemently denied these allegations, and a doctor who examined defendant testified that plaintiff's allegations were inconsistent with defendant's physical condition.

In April 1991, defendant went to a medical facility in Georgia for treatment. When defendant returned, plaintiff was leaving for Arkansas to take her two older children to stay with their father for the summer. While plaintiff was gone, defendant discovered nude photographs of plaintiff that had been taken in their home. When plaintiff returned in mid-June 1991 and was confronted by defendant with the pictures, plaintiff said it was none of his business. According to defendant,

plaintiff told him that he should leave with the child because the child was holding her back. Defendant left with the child and took care of the child almost exclusively by himself for a number of months.

Later, when plaintiff filed for divorce in October 1991, she wanted to spend more time with the child. On October 29, 1991, a temporary visitation order was entered pursuant to a stipulation of the parties, which ordered that defendant was to have primary physical custody and that plaintiff was to have liberal visitation for five hours a day. The order also specifically stated that the custodial arrangement would not establish a custodial environment with either party.

Thereafter, apparently there were problems with visitation—so many problems that the trial court ordered all transfers of custody of the child take place at the police station.

Because defendant had been given primary physical custody, plaintiff was ordered on February 24, 1992, to pay child support of $123 a week. However, by September 1992, only one payment had been made pursuant to an income withholding order, and plaintiff's arrearage was over $3,000.

The social worker assigned to the case, Katherine Morrison, testified that it seemed that plaintiff should be the custodial parent because she had the greatest potential for caring appropriately for the child. Morrison based her conclusions on defendant's weak health and perceived emotional instability. However, defendant's physician would later testify that defendant's medical condition was greatly improved and that nothing would prevent him from taking care of his son.

Near the end of the divorce trial, it was learned that defendant was offered a position with Motown

Records in Georgia and wanted to take the child to Georgia to live with him.

After reviewing the evidence and making findings of fact concerning the various child custody factors outlined in MCL 722.23; MSA 25.312(3), the trial court granted the parties joint legal custody and gave primary physical custody to defendant. Plaintiff was given custody during the Christmas, spring, and summer vacations. The trial court also granted defendant permission to move the child to Georgia. The trial court ordered the foregoing in the September 21, 1992, judgment of divorce, from which plaintiff appeals as of right.

On appeal, plaintiff raises various issues in an attempt to demonstrate that the trial court's decision was not made in the best interests of the child.

In accordance with *Beason v Beason,* 435 Mich 791, 798; 460 NW2d 207 (1990), in divorce cases this Court reviews the trial court's findings of fact for clear error. *Fletcher v Fletcher,* 200 Mich App 505, 522; 504 NW2d 684 (1993). A finding is clearly erroneous if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made. *Harper v Harper,* 199 Mich App 409, 410; 502 NW2d 731 (1993). Because child custody decisions are dispositional in nature, a trial court's ultimate decision is subject to review de novo. *Fletcher, supra* at 512. However, while our review is de novo, it is also limited by § 8 of the Child Custody Act, MCL 722.28; MSA 25.312(8), which provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evi-

dence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Also in accord, see *Barringer v Barringer,* 191 Mich App 639, 640; 479 NW2d 3 (1991).

I

First, plaintiff argues that the trial court erred in failing to determine whether a custodial environment was created after the parties' separation and during the pendency of the divorce. We find this issue to be without merit because the trial court did address the issue of the existence of a custodial environment.

Whether a custodial environment exists is a question of fact, which the trial court must address before ruling on the child's best interests. *Stringer v Vincent,* 161 Mich App 429, 434; 411 NW2d 474 (1987). In the case at bar, the trial court based its finding that no custodial environment existed on the prior custody order and the stipulation of the parties that the shared custody arrangement was not to create any custodial environment with either parent. Thus, contrary to plaintiff's contentions, the trial court made sufficient findings here. *Id.* We would only further note that the record tends to demonstrate that, if anyone, it was defendant who had spent the most time caring for the child. Thus, this issue is without merit.

II

Next, plaintiff argues that the trial court erred by not making specific findings of fact pursuant to MCR 2.517(A)(1). However, we disagree.

Our review of the record of the proceedings

below indicates that the trial court carefully considered each of the statutory factors outlined in § 3 of the Child Custody Act, MCL 722.23; MSA 25.312(3), and made specific findings on the record before granting primary physical custody to defendant, in accord with *Schubring v Schubring,* 190 Mich App 468, 470; 476 NW2d 434 (1991). Thus, this issue is without merit.

III

Next, plaintiff urges us to review the record below and find that the preponderance of the evidence favored granting her physical custody. However, after reviewing the record and the trial court's findings, we are not convinced that the trial court made findings of fact against the great weight of the evidence, abused its discretion, or committed an error of law when it decided to grant defendant primary physical custody. MCL 722.28; MSA 25.312(8); *Barringer, supra* at 640.

The record clearly indicates that the trial court considered the eleven statutory factors of § 3 of the act. After hearing testimony for three days, the trial court found that the preponderance of the evidence favored defendant because statutory factor c strongly favored defendant, factor k somewhat favored plaintiff, and the parties were essentially equal with regard to factors a, b, d, e, f, g, h, i, and j. The trial court awarded the parties joint physical custody, but granted defendant primary physical custody because of "the desirability of maintaining continuity." Our review of the record supports the trial court's decision.

In particular, with respect to factor c, concerning the capacity and disposition to provide necessary support, the record reflects that defendant supported the child almost entirely on his own

during the pendency of the divorce, while plaintiff made only one child support payment pursuant to an income withholding order and was otherwise significantly in arrears. Thus, the trial court did not err in finding that factor c favored defendant.

Under factor k, the trial court believed that it would be desirable for the child to have some contact with his half brothers. In that respect, the trial court found that factor k somewhat favored plaintiff. On appeal, defendant does not dispute this finding.

With respect to the other nine factors, we agree with the trial court that the parties were essentially equal. Thus, the analysis turns on a comparison of factors c and k. Here, we must conclude—as did the trial court—that defendant's ability and willingness to provide support outweighs the interest in maximizing the child's contact with his half brothers. In other words, where defendant had an advantage, it was significant. All other considerations being equal, the parties' respective ability and willingness to provide support was of paramount importance. Conversely, under the trial court's order, there is nothing to prevent the child from maintaining contact with his half brothers during the periods of extended visitation with plaintiff. Thus, we agree with the trial court that defendant's substantial support of the child during the pendency of the divorce tipped the scales in defendant's favor. We cannot dispute the trial court's conclusion that it was in the child's best interest that defendant should receive physical custody. Accordingly, we affirm. MCL 722.28; MSA 25.312(8); *Barringer, supra* at 640.

IV

Next, plaintiff argues that the trial court erred

in allowing defendant to move the child to Georgia with him. With regard to this issue, plaintiff asks this Court to modify its standard of review concerning the removal of a child from the state. However, we disagree with plaintiff's arguments and affirm the decision of the trial court.

Plaintiff acknowledges that the current standard on appeal for reviewing a trial court's decision to allow a parent to remove a child from the state is whether the trial court abused its discretion. *Scott v Scott,* 124 Mich App 448, 451; 335 NW2d 68 (1983); *Anderson v Anderson,* 170 Mich App 305, 309; 427 NW2d 627 (1988). Plaintiff argues that the standard of review should be changed to whether the trial court's decision was clearly erroneous. However, plaintiff has failed to present us with any compelling reason to modify the existing standard of review. We are aware of no legal authority following this Court's decision in *Anderson* that would justify a modification of the abuse of discretion standard.

In *Anderson, supra* at 309, this Court adopted the *D'Onofrio*[1] test for determining whether to grant a request to remove a child from the state, under which a trial court must consider

(1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage

---

[1] *D'Onofrio v D'Onofrio,* 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

in respect of a continuing support obligation; and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed.

To support a removal petition, the moving party must show that removal is warranted by a preponderance of the evidence. *Anderson, supra* at 309. Once the trial court utilizes the *D'Onofrio* test, and makes its decision, this Court reviews that decision for an abuse of discretion. *Anderson, supra* at 309.

Having determined the applicable standard of review, and having reviewed the record, we cannot say that the trial court's decision to allow defendant to take the child out of state was an abuse of discretion.

Under the first *D'Onofrio* factor, the trial court found that the move to Georgia would improve the general quality of life for defendant and the child. This is amply supported by the record in light of defendant's job offer in Georgia.

Under the second factor, the trial court found no evidence that the move was intended to defeat or frustrate plaintiff's visitation. Our review of the record also reveals no such evidence. The furtherance of defendant's career was the primary motivation for the move.

Under the third factor, there was no evidence that plaintiff's resistance to the move was to secure a financial advantage in respect of a continuing support obligation. Indeed, defendant had been providing the bulk of support for the child, and plaintiff had not been paying child support as required by court order.

Finally, under the fourth factor, the trial court

found that there was a realistic opportunity of preserving and fostering the parental relationship with plaintiff. Plaintiff was to have the child for the entire Christmas, spring, and summer vacations. Thus, plaintiff would be able to foster her relationship with the child during these extended visitations. Further, the parties were found to be financially able to share in the costs of transportation. Thus, the arrangement was financially feasible. Accordingly, on appeal, we will not disturb this arrangement, because the fashioning of the arrangement was within the trial court's discretion. *Anderson, supra* at 309.

Affirmed.