*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH M. GLEASON,

      Plaintiff-Appellee,

v

RYAN J. GLEASON,

      Defendant-Appellant.

UNPUBLISHED
February 4, 2021

No. 352811
St. Clair Circuit Court
Family Division
LC No. 13-002588-DM

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting plaintiff's motion for a change of domicile of their minor child, LG, and denying defendant's motion to stay the proceedings. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and defendant were married on February 15, 2008. LG was born on April 20, 2010. On September 30, 2013, plaintiff filed for divorce. On November 14, 2013, the court entered an order for custody and parenting time awarding plaintiff and defendant joint legal and joint physical custody of LG. Plaintiff was awarded primary residence of LG with LG attending school in the Algonac School District unless otherwise agreed upon by plaintiff and defendant or further court order. In regard to parenting time, defendant had LG every other Tuesday until the following Monday morning at 8:00 a.m. Plaintiff then had LG from Monday morning for eight days until the following Tuesday. On February 27, 2014, the judgment of divorce was entered. Subsequently, both plaintiff and defendant separately moved to Sterling Heights where LG started to attend school. At the time the proceedings commenced in this action, plaintiff and defendant both lived in Sterling Heights.

On October 8, 2019, plaintiff filed an amended motion for change of domicile asserting that she was a member of the Air National Guard, currently working at the Selfridge Air National Guard Base (Selfridge), on active reserve for the military, and employed by the Department of Defense in a civilian job. With her position at Selfridge, plaintiff was deployed several times a

year, which lasted several weeks or several months, and she was required to participate in drill weekends once a month. Plaintiff further asserted that she had been offered a new job with the military in Alpena, Michigan (Alpena), which was scheduled to begin on November 15, 2019. Plaintiff believed that accepting the job in Alpena and relocating LG to Alpena would improve her life as well as LG's life because she would no longer be deployed or have to participate in drill weekends, which kept her away from LG, she would receive free health insurance for her and LG, she would be able to retire from the military much earlier with the position in Alpena than with her current position, and LG would benefit from living in a small town such as Alpena. Defendant filed a response arguing that the trial court should not grant plaintiff's motion for change of domicile because plaintiff was motivated to move to Alpena to be with her fiancé Jules Matthew Descamps, and relocating LG to Alpena would take him farther away from defendant, his friends and family, and his school. During the proceedings, defendant also filed a motion requesting that the court grant him full custody of LG and grant plaintiff reasonable parenting time.

The court held an evidentiary hearing on plaintiff's motion for change of domicile and defendant's motion to change custody. The trial court concluded that it was in LG's best interests that plaintiff have full physical custody of LG. The court granted plaintiff's motion for change of domicile. The trial court also ordered, despite an oral motion by defendant requesting that the court stay the change of domicile until LG's school semester ended, that the change of domicile would become effectively immediately. Defendant now appeals.

## II. CHANGE OF DOMICILE

Defendant argues that the trial court abused its discretion in granting plaintiff's motion for a change of domicile because plaintiff failed to establish, by a preponderance of the evidence, that the enumerated factors in MCL 722.31(4) favored a change in domicile. We disagree.

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the 'great weight of the evidence' standard." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id.* (quotation marks and citation omitted). Under the great weight of the evidence standard, "the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction." *Wardell v Hincka*, 297 Mich App 127, 133; 822 NW2d 278 (2012). "However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Rains*, 301 Mich App at 324-325 (quotation marks and citation omitted). "In the child custody context, questions of law are reviewed for clear legal error." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Id.*

In *Rains*, this Court enumerated the four-step process a court must undertake when determining whether to grant or deny a motion for change of domicile:

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the

so-called *D'Onofrio*[1] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325 (citation omitted).]

## A. WHETHER PLAINTIFF ESTABLISHED THE FACTORS ENUMERATED IN MCL 722.31(4) BY A PREPONDERANCE OF THE EVIDENCE

Under MCL 722.31(1), "a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." MCL 722.31(4) governs when a parent seeks to move a child more than 100 miles from the child's legal residence, and provides:

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

As the party requesting the change in domicile, plaintiff had the burden of establishing, by a preponderance of the evidence, that the change in domicile was warranted. *Rains*, 301 Mich App at 325-325. Defendant argues that the trial court's findings regarding MCL 722.31(4)(a) and (c) were against the great weight of the evidence.

### 1. MCL 722.31(4)(a)

Defendant contends that the trial court's finding under MCL 722.31(4)(a)— that changing LG's legal residence to Alpena had the capacity to improve his quality of life—was against the great weight of the evidence. Defendant contends that the trial court focused on the way in which the move to Alpena would improve plaintiff's quality of life but failed to focus primarily on the way in which the move to Alpena would improve LG's quality of life.

This Court has recognized that "an increase in a parent's income may improve a child's quality of life." *Yachcik v Yachcik*, 319 Mich App 24, 41; 900 NW2d 113 (2017). The court found that there would be an improvement in the "financial situation" if plaintiff relocated to Alpena. The court noted that, although plaintiff's actual salary would not increase, the benefits she would receive from the new position, as well as the ability to retire earlier, were an improvement because the new position would move her toward financial stability. The court concluded that the move to Alpena had the capacity to improve both plaintiff's and LG's lives because plaintiff would not have to be deployed if she accepted the new position in Alpena. The court noted that, throughout LG's life, plaintiff had been absent because she had been deployed for extended periods of time. Further, the court noted that it was hard on LG to have plaintiff absent for these periods of time. The court also took particular concern with the risk posed with deployment.

This Court has also recognized that "living in close proximity to immediate and extended family members and remaining in a stable environment are relevant considerations with regard to MCL 722.31(4)(a)." *Id*. at 44. The court found that the move to Alpena had the potential to improve LG's life because Alpena was closer in proximity to LG's maternal family. The court noted that, although Alpena was farther away from LG's paternal family, LG appeared to have a closer relationship with his maternal family than his paternal family because, when plaintiff was deployed, LG spent some of that time living with his maternal grandparents. We note, however, that the record does not support the trial court's finding that LG would be closer to his maternal family in Alpena. Plaintiff testified that her parents and sisters lived in Millington, Michigan, which is approximately an hour and a half drive from Sterling Heights and two hours from Alpena. Thus, the move to Alpena would move LG farther from his maternal family as well as farther from his paternal family.

Further, "the benefits of the school or school district where the moving party plans to relocate is a relevant consideration under MCL 722.31(4)." *Id*. at 41. The court also considered the evidence presented regarding the safety of both Sterling Heights and Alpena, as well as the statistics of the elementary school in Alpena and the school LG attended in Sterling Heights. The court found that the schooling or crime rates did not affect its decision because LG would perform well in any school he attended, and it was unlikely that he would get involved in unsafe situations.

Upon review of the record, the trial court primarily focused on the fact that plaintiff's new position offered multiple benefits, including financial stability, increased time with plaintiff, and no risk of deployment, all of which had the capacity to improve LG's life. And, although the trial court's conclusion regarding proximity to extended family does not appear to be supported by the record, the evidence does not indicate that the trial court's result was so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias. Thus, the trial court did not abuse its discretion in regard to MCL 722.31(4)(a).

### 2. MCL 722.31(4)(c)

Defendants contends that, because of the domicile change, it is not possible for the court to order a modification of the parenting time schedule that will adequately preserve and foster his relationship with LG. We disagree.

"[W]hen the domicile of a child is changed, the new visitation plan need not be equal with the old visitation plan, as such equality is not possible." *McKimmy v Melling*, 291 Mich App 577, 583; 805 NW2d 615 (2011). "The new visitation plan only need provide a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *Id*. (quotation marks and citation omitted). "This Court has previously opined that '[p]erhaps' extended periods of visitation will 'foster, not hinder,' a closer parent-child relationship." *Id*., quoting *Anderson v Anderson*, 170 Mich App 305, 311; 427 NW2d 627 (1988). "In applying factor (c), a trial court should consider the financial feasibility of the new visitation plan and the ages of the children, as well as the use of modern technology[.]" *McKimmy*, 291 Mich App at 583. "The separation between a parent and a child can be diminished by the use of modern communication technology." *Id*. (quotation marks and citation omitted).

The court concluded that a week on week off schedule would no longer be possible because LG could not attend two different schools. The court further concluded that it would be possible to work out a parenting time schedule to allow both plaintiff and defendant to maintain their relationship with LG. The court believed that, because both plaintiff and defendant had a strong relationship with LG, it would be possible for either parent to maintain their respective relationship with LG. The court also noted that it was taking into consideration available technology that would diminish any separation.

The court ordered that defendant would have parenting time one weekend a month, and plaintiff would be required to drive LG to Sterling Heights for that weekend. The court also ordered that defendant could have one other weekend a month in Alpena if he wanted to drive to Alpena for the weekend. In addition, defendant would have parenting time in the summer, starting the first Sunday after school ends. The court ordered the parties to use the St. Clair County long distance guidelines for holidays, which generally recommends alternating holidays. The court also asserted that LG needed to be able to contact defendant at any time. Because the inquiry under MCL 722.31(4)(c) is "only whether the proposed parenting-time schedule provides a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent," *Melling*, 291 Mich App at 584 (citations and quotation marks omitted), the trial court's findings are not against the great weight of the evidence. The parenting time schedule allows defendant to maintain regular contact with LG. He has the ability to see him two weekends a month. Further, during the summer, defendant has sole parenting time, allowing him and LG to

maintain a similar schedule and routine as under the prior parenting time schedule. In addition, defendant is entitled to communicate electronically with LG at any time.

### 3. FOCUS ON THE CHILD UNDER MCL 722.31(4)

Defendant contends that that trial court committed legal error by, on its face, failing to apply the correct legal standard. We disagree.

For an issue to be preserved for appellate review, it must be raised in the trial court. *Glasker-Davis v Auvenshine*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 345238); slip op at 3. "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. at ___; slip op at 3 (citation omitted). In the lower court, defendant failed to challenge the trial court's findings on the basis that the court misapplied the legal standard. Thus, this issue is not preserved for appellate review. This Court reviews unpreserved issues for plain error. *In re Contempt of Henry*, 282 Mich App 656, 666; 765 NW2d 44 (2009). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Diehl*, 329 Mich App 671, 701; 944 NW2d 180 (2019) (citation omitted).

Under MCL 722.31(4), as stated earlier, before permitting a legal residence change restricted by subsection MCL 722.31(1), the court is required to consider the factors set forth in MCL 722.31(4)(a)-(e) *with the child as the primary focus in the court's deliberations*. Defendant contends that the trial court clearly erred because it failed to keep LG the primary focus of its deliberations, but rather, the trial court focused primarily on whether relocating to Alpena would benefit plaintiff.

Defendant's argument is without merit. The trial court did not appear to improperly apply MCL 722.31(4). The court stated on the record that it needed to consider MCL 722.31 and the *D'Onofrio* factors. The court further stated that "[t]he analysis under the *D'Onofrio* factors, as [sic], that's codified in [MCL] 722.31(4), [the] primary focus is supposed to be on [LG]." Thus, the court acknowledged that its primary focus must be on LG. Therefore, the trial court did not clearly apply the wrong legal standard to its findings.

### B. ESTABLISHED CUSTODIAL ENVIRONMENT

"It is only *after* the trial court determines that the moving party has shown by a preponderance of the evidence that a change of domicile is warranted that the trial court must determine whether an established custodial environment exists." *Rains*, 301 Mich App at 327. Under MCL 722.27(1)(c):

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. If a motion for change of custody is filed

while a parent is active duty, the court shall not consider a parent's absence due to that active duty status in a best interest of the child determination.

"A child may have an established custodial environment with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Rains*, 301 Mich App at 327 (quotation marks and citation omitted).

The court determined that LG's change of residence from Sterling Heights to Alpena, and the consequent change in parenting time for defendant, would change the established custodial environment from both plaintiff and defendant to plaintiff. Defendant does not dispute the trial court's conclusion. On appeal, plaintiff briefly asserts that LG's established custodial environment may not change because the move to Alpena does not affect defendant's ability to guide, discipline, comfort, and provide for LG. Nonetheless, plaintiff argues that, if there is a change in custodial environment, the trial court correctly found that the change in custodial environment was in LG's best interest.[2]

W note that the trial court properly found that LG's custodial environment would change from both parents to only plaintiff. LG lived with both plaintiff and defendant in Sterling Heights. Defendant equally participated in providing structure and guidance for LG. Defendant parented LG equally during the school year. He helped him with his homework and was actively involved in his life. The everyday involvement, particularly during the school year when a structured environment is so important for a child, would inevitably change from both plaintiff and defendant to only plaintiff with the move to Alpena. Thus, the court was required to determine whether the change in custodial environment was in LG's best interests. *Id*. at 328.

## C. BEST INTERESTS

Defendant argues that the trial court erred in concluding that plaintiff established, by clear and convincing evidence, that it was in LG's best interests to change the established custodial environment. We disagree.

As noted above, "[t]his Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion[.]" *Rains*, 301 Mich App at 324. This Court reviews a trial court's findings of fact regarding the best interest factors "under the great weight of the evidence standard." *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006).

If the trial court concludes that a change in an established custodial environment would occur, then the party requesting the change of domicile must prove by clear and convincing

---

[2] In the trial court, plaintiff agreed that the established custodial environment would change if LG moved to Alpena. Thus, to the extent plaintiff intends to argue on appeal that the established custodial environment will not change, this argument was waived in the trial court. "A waiver consists of the intentional relinquishment or abandonment of a known right." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018). "Thus, a valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose[.]" *Id*. (quotation marks and citation omitted).

evidence that the change is in the child's best interests. *Id*. MCL 722.23 sets forth the factors to be considered in determining a child's best interests:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.
>
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
>
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.
>
> (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.
>
> (l) Any other factor considered by the court to be relevant to a particular child custody dispute.

"These findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Rains*, 301 Mich App at 329 (quotation marks and citation omitted). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Id*. (quotation marks and citation omitted). "A court need not give equal

weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi*, 273 Mich App at 184.

The trial court found that best interest factors (a), (b), (d), (e), (f), and (g) were neutral and favored neither plaintiff nor defendant, factor (k) was not applicable, and factors (c), (h), (j), and (l) favored plaintiff. Defendant challenges the trial court's findings regarding factors (d), (e), (f), (h), and (j).

## 1. MCL 722.23(d)

MCL 722.23(d) requires the court to consider "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." Defendant argues that the trial court's failure to find that this factor favored defendant was against the great weight of the evidence. We disagree.

The trial court found that best interest factor (d) was neutral because both plaintiff and defendant had consistently provided LG an appropriate household, and LG was comfortable in both plaintiff's and defendant's homes. The court further found that both plaintiff and defendant protected LG and provided LG with a safe household. The trial court's findings were not against the great weight of the evidence. Since the time of the party's divorce in 2014 and the initial custody order, LG had equal time living with both plaintiff and defendant. Both plaintiff and defendant consistently exercised their one week on and one week off parenting time. The evidence supported the finding that both plaintiff and defendant provided safe, suitable, and satisfactory environments for LG.

## 2. MCL 722.23(e)

MCL 722.23(e) requires the court to consider "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." Defendant argues that the trial court's failure to find that MCL 722.23(e) favored defendant was against the great weight of the evidence because plaintiff has a history of unstable relationships. We disagree.

"This factor exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other." *Rains*, 310 Mich App at 336 (quotation marks and citation omitted). The trial court concluded that best interest factor (e) was neutral because plaintiff and defendant both provide permanency to LG. The trial court considered plaintiff's previous engagement to Greg Atkins as well as her current engagement to Descamps, and concluded that there was no evidence that there had been anything inappropriate about plaintiff having Atkins and Descamps in her household. In addition, the court found that plaintiff and Descamps had a home together in Alpena, and the relationship and living arrangement appeared permanent. In addition, the court noted that both plaintiff and defendant were relatively young adults and may have different romantic relationships in the future, but despite this fact, they both provided a permanent household. The trial court's findings were not against the great weight of the evidence. Despite plaintiff's relationships, there was no evidence that plaintiff failed to provide a permanent family unit for LG, or that she would not be able to provide a permanent family unit for LG in Alpena. Defendant also provided a permanent family unit for LG. Therefore, this factor is neutral.

### 3. MCL 722.23(f)

MCL 722.23(f) requires the court to consider "[t]he moral fitness of the parties involved." Defendant argues that the trial court's failure to find that MCL 722.23(f) favored defendant was against the great weight of the evidence because plaintiff has a history of unstable relationships and her relationships negatively affected LG. We disagree.

In *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994), the Michigan Supreme Court explained the relevant inquiry when evaluating best interest factor (f):

> To evaluate parental fitness, courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship. Thus, the question under factor f is not "who is the morally superior adult;" the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct. We hold that in making that finding, questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function as a parent. [Footnote omitted.]

Here, the trial court found that best interest factor (f) was neutral because neither plaintiff nor defendant had any issues that impacted their ability to properly parent LG. Defendant contends that plaintiff's personal relationships impacted her moral fitness as a parent insofar as her relationship choices impacted LG. The evidence indicates that plaintiff entered into a relationship with Atkins in 2016, to whom she became engaged. In December 2018, the relationship ended, in part, because LG did not like Atkins. In January 2019, plaintiff started dating Descamps, and in February 2019, Descamps moved into plaintiff's home.

The trial court's finding that best interest factor (f) was neutral was not against the great weight of the evidence. Despite plaintiff's two relationships, there was no evidence that her decisions regarding her relationships significantly influenced how she functioned as a parent. In fact, plaintiff ended her relationship with Atkins, in part, because LG did not like Atkins. Thus, plaintiff put LG before her relationship.

### 4. MCL 722.23(h)

MCL 722.23(h) requires that "[t]he home, school, and community record of the child" be considered. Defendant contends that the trial court erred in concluding that this factor favored plaintiff because the trial court completely failed to consider LG's life in Sterling Heights. We agree.

The trial court concluded that best interest factor (h) favored plaintiff because plaintiff "is a little bit more flexible" and "more mindful of encouraging" LG's relationship with his friends. The court also found that, "as it relates to the community and the school engagement," factor (h) favored plaintiff. The court provided no other support for its finding. The trial court's findings were against the great weight of the evidence. There was ample evidence presented regarding LG's home, school, and community record as it pertains to defendant and his life in Sterling Heights. There is no dispute that LG and defendant had a strong bond. They had established a routine in their home together. Defendant assisted LG with his homework, and required LG to

complete chores. The testimony indicated that defendant was very involved in LG's life. LG played football for the city. As soon as LG joined the football team, defendant joined as a "team dad." LG was a straight-A student at his elementary school in Sterling Heights. LG had friends and family in the community. Further, defendant had located a church for him and LG to attend in the area. This factor should have been neutral. The record indicates that LG was succeeding in his home life, schooling, and community in Sterling Heights, and defendant helped foster his success.

### 5. MCL 722.23(j)

MCL 722.23(j) requires consideration of "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." Defendant argues that the trial court's findings regarding factor (j) were against the create weight of the evidence. We disagree.

Defendant contends that the trial court's findings were against the great weight of the evidence because plaintiff's failure to inform defendant that she intended to move to Alpena demonstrated that plaintiff was unwilling to facilitate and encourage a relationship between LG and defendant. The trial court found that this factor favored plaintiff because she had demonstrated a wiliness to encourage a relationship between defendant and LG. The trial court's findings were not against the great weight of the evidence. The trial court found that plaintiff had previously moved to Sterling Heights where defendant lived, so that plaintiff and defendant could be closer for LG. Plaintiff demonstrated that she attempted to include defendant in activities with her and LG. This is supported by the record.

Plaintiff testified that she invited defendant to play football with her and LG, she invited defendant on a vacation with her and LG, she allowed LG to speak to defendant on the phone during her parenting time, she bought Father's Day cards for LG to give to defendant, and she invited defendant to two of LG's birthday parties. The court also found that, since the proceedings had begun, defendant had retreated and refused to encourage LG's relationship with plaintiff. Defendant testified that, since the proceedings started, it had become more difficult to coparent with plaintiff. Defendant did not discourage LG from speaking to plaintiff during his parenting time, but he also did not encourage LG to speak to her. Defendant indicated that, because he and plaintiff only had a limited amount of time with LG, when it is their respective parenting time, they should have their time alone. Although plaintiff and defendant had always attended LG's parent-teacher conferences together prior to the proceedings, and despite plaintiff asking defendant to attend LG's 2019 parent-teacher conference with her, defendant refused because he did not think it was a good idea for them to go together. Thus, the record supports the trial court's findings.

In conclusion, despite the fact that the trial court's findings regarding factor (h) were against the great weight of the evidence, the trial court's findings regarding factors (d), (e), (f), and (j) were not against the great weight of the evidence. Thus, the trial court did not abuse its discretion in concluding that it was in LG's best interests to grant plaintiff's motion for change of domicile.

### III. DUE PROCESS

Defendant contends that the trial court violated his due process rights when it decided to grant plaintiff's motion for change of domicile before defendant presented his case. We disagree.

"Due process requires that a litigant be afforded a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence." *Hisaw v Hayes*, 133 Mich App 639, 644; 350 NW2d 302 (1984). Defendant contends that he was denied his ability to present a defense to plaintiff's motion for change of domicile, and therefore, denied his due process rights because the trial court decided to grant plaintiff's motion prior to defendant presenting any evidence. In support of this argument, defendant contends that the trial judge stated on the record that, during his *in camera* review with LG, he told LG that he would be moving to Alpena, which could be the reason LG had recently displayed abnormal, negative behaviors. The *in camera* interview occurred before defendant had finished presenting his evidence in the case. Defendant, however, misconstrues that trial judge's statement. During the evidentiary hearing, while the trial judge was rendering his decision, the judge referenced LG's recent behavior in school, stating:

> I just want to mention I think he obviously knows what's going on. I may have told him it was going to happen in a couple weeks, so my guess is he had a pretty good idea of what was going to happen. And so I'm sure he's been kind of on edge, not sure exactly what day it's going to be and those kinds of things, and so I'll take the blame on that one as I think about it.

The trial judge did not state that he told LG that he would be moving to Alpena or that the court intended to grant plaintiff's motion for change of domicile. On the basis of the record, it appears that the trial judge likely told LG that a decision would be rendered within the next couple of weeks, which may have caused LG to act out. Defendant was afforded the opportunity to present his evidence, and there is no indication that the trial court decided to grant plaintiff's motion for change of domicile before the conclusion of the evidentiary hearing.

## IV. LEGAL ERROR

Defendant also argues that the trial court committed a legal error by failing to address the best interest factors separately as they related to defendant's motion to change custody. We disagree.

If the trial court finds that a change of domicile would modify or alter the child's established custodial environment, then the trial court must determine whether the change in domicile would be in the child's best interests by determining whether the best interest factors in MCL 722.23 have been established by clear and convincing evidence. *Rains*, 301 Mich App at 325. The trial court thoroughly analyzed the best interest factors and concluded that plaintiff should have full physical custody of LG and it was in LG's best interests to change LG's domicile Defendant provides no legal support for the contention that the trial court was required to conduct a separate best interest analysis solely to determine whether defendant could establish, by clear and convincing evidence, that changing the established custodial environment favored defendant despite the fact that the trial court made a clear ruling on the issue. Thus, defendant has failed to establish that this Court should remand for the trial court to conduct a separate best interest analysis.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel